# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 5, 2009          Decided July 24, 2009

No. 08-5366

YOUNG AMERICA'S FOUNDATION,
APPELLANT

v.

ROBERT M. GATES,
SECRETARY, U.S. DEPARTMENT OF DEFENSE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01351-JDB)

*William Perry Pendley* argued the cause for appellant. With him on the briefs was *Elizabeth Gallaway*.

*Henry C. Whitaker*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Gregory G. Katsas*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Scott R. McIntosh*, Attorney.

Before: GINSBURG, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Opinion concurring in the judgment filed by *Senior Circuit Judge* RANDOLPH.

GINSBURG, *Circuit Judge*: The Young America's Foundation sued to compel the Secretary of Defense to withhold funds from the University of California–Santa Cruz because the University allegedly maintains a policy or practice that denies military recruiters access to the campus equal to the access available to other employers. The district court dismissed the case for lack of jurisdiction, holding both that YAF lacks standing and that the Secretary's decision whether to enforce the Solomon Amendment is committed to his discretion by law and therefore not reviewable under the Administrative Procedure Act, *see* 5 U.S.C. § 701(a)(2). Because we agree YAF lacks standing, we affirm the order of the district court on that ground alone.

## I.   Background

No federal funds subject to the so-called Solomon Amendment may be provided to a college or university

> if the Secretary of Defense determines that that institution ... has a policy or practice ... that either prohibits, or in effect prevents the Secretary of a military department ... from gaining access to campuses, or access to students ... for purposes of military recruiting in a manner that is at least equal in quality and scope to the access to campuses and to students that is provided to any other employer.

10 U.S.C. § 983(b); *see id.* § 983(d) (monies to be withheld include all "funds made available for" use by certain

departments and agencies, not including funds for student financial assistance).[*] YAF, which is "committed to ensuring that young Americans understand and are inspired by ... the importance of a strong national defense," Amended Compl. ¶ 3, has among its members several students enrolled at UCSC, *id.* ¶ 5. YAF alleges that on five occasions from 2005 to 2007 students and faculty protesters prevented or disrupted military recruiting at UCSC. On two such occasions, disruptive protests caused military recruiters to leave an on-campus job fair. On another occasion, protesters blocked students' access to military recruiters at a job fair. As a result, on all three occasions one or more student members of YAF who wanted to meet with a military recruiter was unable to do so. Finally, the threat of protests caused UCSC to cancel one job fair and caused some military recruiters to withdraw in advance from another.

YAF informed the Secretary of these incidents at UCSC but the Secretary took no action pursuant to the Solomon Amendment. YAF eventually filed this suit, seeking a writ of mandamus and an injunction ordering the Secretary to determine that UCSC is in violation of the Amendment and to withhold covered federal funds.

The district court dismissed the case for lack of jurisdiction, holding YAF lacked standing and the Secretary's decision regarding enforcement of the Solomon Amendment

---

[*] As the Secretary's delegate, the Principal Deputy Under Secretary of Defense for Personnel and Readiness makes the final determination that an institution is ineligible for federal funds. 32 C.F.R. § 216.5(a)(1)(ii). He disseminates that determination to the head of any department or agency that administers funds subject to the Solomon Amendment, *id.* § 216.5(a)(1)(iii), and enters the institution into the Excluded Parties List System, which is available to all Executive Branch agencies, *id.* § 216.5(a)(5) & n.1.

was committed to his discretion by law and therefore not subject to judicial review under the APA.  560 F. Supp. 2d 39, 47 (2008).  YAF then appealed.

## II.  Analysis

We review *de novo* a dismissal for lack of standing, *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007), on the assumption the allegations of the complaint relevant to standing are true, *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264 (1991).  A membership organization has standing to sue if, inter alia, "at least one of its members would have standing to sue in his own right."  *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-43 (1977)).  Because, as we conclude below, no member of YAF has standing to sue in his own right, YAF lacks standing.

The "irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  YAF asserts its members have been injured because they have been deprived of the opportunity to meet on the UCSC campus with military recruiters.  The district court assumed YAF had alleged a sufficient injury, but held it had not alleged facts sufficient to show the injury (1) was caused by the Secretary's failure to list UCSC as not in compliance with the Solomon Amendment and to withhold funds accordingly and (2) would be redressed by an order compelling him to do so.  560 F. Supp. 2d. at 50.  We agree that YAF has not alleged facts sufficient to show its injury will be redressed by the relief it seeks.

YAF's burden was to allege facts showing it is "likely, as opposed to merely speculative, that [its] injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561 (internal quotation marks omitted). Where the plaintiff's injury "arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else" — here, the Secretary's failure to regulate UCSC — redressability turns ultimately upon "choices made by independent actors not before the courts." *Id.* at 562 (emphasis omitted); *see Summers v. Earth Island Inst.*, 129 S.Ct. 1142, 1149 (2009) (when plaintiff challenges regulation of (or failure to regulate) third party, standing "is ordinarily substantially more difficult to establish").

In arguing the court cannot redress YAF's injury, the Secretary focuses upon the protesters, contending they "are most unlikely to abandon their efforts simply because UCSC may lose federal funds." Appellee Br. 17. YAF, in contrast, argues the "relevant third party here is UCSC," Appellant Br. 18, which it alleges "has given tacit approval" to the protests by failing to prevent them, Amended Compl. ¶ 27.

Regardless upon which third party one puts the emphasis, YAF's task was to allege facts sufficient to show it is likely the Secretary's withholding or threatening to withhold federal funds would enable YAF's members to meet with military recruiters at on-campus job fairs. *See Renal Physicians Ass'n*, 489 F.3d at 1275 (at pleading stage plaintiff must allege facts showing it is likely "the third party directly injuring the plaintiff would cease doing so as a result of the relief the plaintiff sought"). This it has not done.

As the Supreme Court has pointed out, the Solomon Amendment leaves the University "a choice: Either allow military recruiters the same access to students afforded any

other recruiter or forgo certain federal funds." *Rumsfeld v. Forum for Academic & Institutional Rights*, *Inc.*, 547 U.S. 47, 58 (2006). Based solely upon its allegation that UCSC received $80 million in federal funds in 2005 and receives "tens of millions" every year, Amended Compl. ¶ 9, YAF argues it is not speculative what the University would choose and "there is 'little doubt' that UCSC's behavior would change" if the Secretary invoked the Solomon Amendment against it. Appellant Br. 18 (quoting *Renal Physicians Ass'n*, 489 F.3d at 1275). Merely showing UCSC's behavior would change in some undefined way is not enough, however; YAF must allege facts from which we can reasonably infer it is likely that the loss or threatened loss of the money would motivate the University to act to ensure YAF's members could meet with military recruiters at on-campus job fairs unimpeded.

The Secretary does not claim the University might be able to replace such substantial sums. *Cf. St John's United Church of Christ v. FAA*, 550 F.3d 1168, 1170 (D.C. Cir. 2008) (holding petitioners had not shown injury was redressable because they failed to rebut city's claim to have alternative sources for $1.2 billion in federal funds for airport expansion"). We assume, therefore, the University would do what it could do to avoid losing the funds. That the University has at all relevant times had a written policy of providing equal access to military recruiters, *see* 560 F. Supp. 2d at 42, also suggests it is motivated to comply with the Solomon Amendment.

Still, YAF has not alleged facts from which we can reasonably infer UCSC could do more than it has done already to ensure protesters do not impede YAF's members from "access[ing] military recruiters during job fairs on campus," Amended Compl. ¶ 30. As the Secretary points out,

YAF's own allegations indicate UCSC is responsive to concerns regarding disruptive protests. YAF alleges "UCSC canceled a job fair ... due to safety concerns associated with UCSC protestors who planned to oppose the presence of military recruiters." Amended Compl. ¶ 24. Canceling a job fair presumably equalized students' access to military and non-military recruiters at job fairs, at least for a time (though it is not clear that made YAF's members any better off). YAF also put before the district court the statement of a UCSC official that the University had followed the "standard campus judicial process ... to investigate whether students violated the campus code of conduct and to take appropriate disciplinary action." 560 F. Supp. 2d at 51. We agree with the district court, therefore: In light of (1) YAF's allegations and its evidence that UCSC has already "taken measures to ensure that the protests do not violate student or faculty codes of conduct," and (2) YAF's failure to "suggest what more could be done by UCSC," *id.*, it is speculative whether an order compelling the Secretary to withhold funds from the University would redress YAF's injury.

## III. Conclusion

In sum, YAF lacks standing because it has not alleged facts sufficient to show a ruling in its favor will likely redress the injury it claims. The order of the district court dismissing this case for lack of subject matter jurisdiction is therefore

*Affirmed*.

RANDOLPH, *Senior Circuit Judge*, concurring in the judgment: For the reasons stated by Judge Bates, I would affirm solely on the ground that the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), precludes judicial review of the Secretary's decision whether to enforce the Solomon Amendment. *See Young America's Found. v. Gates*, 560 F. Supp. 2d 39, 43-47 (D.D.C. 2008).