# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 12, 2010          Decided March 19, 2010

No. 09-5260

VIETNAM VETERANS OF AMERICA AND VETERANS OF
MODERN WARFARE,
APPELLANTS

v.

ERIC K. SHINSEKI, IN HIS OFFICIAL CAPACITY AS SECRETARY
OF THE DEPARTMENT OF VETERANS AFFAIRS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01934-RBW)

———

*Robert E. Cattanach* argued the cause for appellants. With him on the briefs were *Frederick G. Jauss IV* and *Creighton R. Magid.*

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *William G. Kanter*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, and *Ronald J. Wiltsie II*, Attorney, entered appearances.

2

Before: GINSBURG and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Appellants are two veterans associations appealing the district court's dismissal of their suit alleging that the Department of Veterans Affairs violated the APA and the Constitution (due process clause) because of the average time it takes the VA to process veterans' claims. The district court held that it lacked jurisdiction and we agree, although for somewhat different reasons.

I

Congress has created a number of programs that provide monetary benefits to America's veterans and their families. One of the largest such programs provides disability benefits to veterans for service-related injury or disease. Approximately 3.4 million veterans currently receive disability benefits from the VA.

Veterans who seek disability benefits must file a claim with the VA at one of its 57 regional offices throughout the country. The VA is required by statute to assist veterans in developing evidence to support their claims.[1] The VA *inter alia* arranges for and provides medical examinations when necessary, seeks all government records relevant to a claim (such as military service records and treatment records from VA medical facilities), and makes reasonable efforts to acquire non-federal records identified by the veteran. Once all relevant evidence has been gathered, a VA "rating specialist" evaluates the claim.

---

[1] *See* 38 U.S.C. § 5103, *et seq.*

This process is informal and non-adversarial. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 309-10 (1985). The rating specialist first determines whether the disability is connected to eligible service, and if so, determines a percent disability rating, a figure that, along with a statutory schedule, determines the amount of assistance to which the veteran is entitled. The VA issues award letters to veterans entitled to compensation and informs veterans whose claims are denied of the reasons for their denial.

Veterans who wish to contest this initial decision may do so. They may (but are not required to) elect to have their claim reviewed by a more senior rating specialist within the regional office where the claim was initially adjudicated and, if still dissatisfied, they may appeal to the Board of Veterans' Appeals. The Board, led by a chairman responsible to the Secretary of the VA, conducts *de novo* review of presented claims. While the Board only decides appeals after a claimant has been given the opportunity for a hearing, these proceedings are also quite informal. *See id.* at 310-11. Adverse decisions by the Board can subsequently be appealed exclusively to the United States Court of Appeals for Veterans Claims ("CAVC"), an independent Article I federal court. The CAVC may review all legal issues, including constitutional claims, and, notably, has the power to "compel action of the Secretary unlawfully withheld or unreasonably delayed." Decisions of the CAVC may be appealed to the United States Court of Appeals for the Federal Circuit which has authority to "decide all relevant questions of law, including interpreting constitutional and statutory provisions."[2] Further review, of course, may be sought in the United States Supreme Court.

---

[2] 38 U.S.C. § 7261(a); *id.* at § 7292(d)(1).

4

Congress has divested other federal courts of authority to review certain decisions relating to benefits. Thus, 38 U.S.C. § 511 provides that, "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans," but, subject to a few carefully defined exceptions (including the appeals process outlined above), "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." Congress, moreover, specified that challenges to VA regulations may only be brought in the Federal Circuit.

Over the last several years, various entities including the Government Accountability Office, veterans service organizations, and congressional committees have raised concerns regarding the timeliness with which the VA system processes claims for benefits. In a 2005 report to the Senate Committee on Veterans' Affairs, the GAO noted "large numbers of pending claims and lengthy processing times" in the VA's disability program, and subsequent GAO testimony to a House of Representatives subcommittee indicated that the VA's inventory of pending claims and their average time pending had increased "significantly" over the previous 3 years.[3]

---

[3] U.S. Gen. Accountability Office, GAO-05-749T, Claims Processing Problems Persist and Major Performance Improvements May Be Difficult, 3 (2005); U.S. Gen. Accountability Office, GAO-07-562T, Processing of Claims Continues to Present Challenges 3 (2007).

Congress has taken some steps to speed up the claim processing. In 2007, for example, Congress provided funding to the VA to hire an additional 3,100 employees, the vast majority of which were hired into the division responsible for processing disability claims. Congress also recently enacted a law requiring that the VA establish a pilot program in 10 of its regional offices under which fully developed disability claims (a subset of claims where no additional evidence need be collected) are adjudicated within 90 days.[4] Congress has not, however, enacted any statutory deadlines that would require the VA to adjudicate *all* disability claims within a definite time period.

Unsatisfied with these measures, two advocacy groups for veterans, Vietnam Veterans of America and Veterans for Modern Warfare filed a complaint which alleged that the VA was in violation of the Administrative Procedure Act and the Due Process Clause of the Constitution (as well as federal statutes that require the VA to provide "expeditious treatment" to claims that are remanded from the CAVC to the VA, *see* 38 U.S.C. § 7112, and from the Board back to the VA regional office, *see id.* at § 5109B) because it generally takes too long for a veteran to get relief. The plaintiffs sought a declaratory judgment as well as an injunction requiring the VA to issue "an initial decision on every veteran's claim for benefits within 90 days" and to "ensure that appeals of claims decisions are resolved within 180 days."

The complaint seeks a ruling that the VA's entire disability benefits processing *system* is illegal. It does not suggest the time

---

[4] *See* Veterans' Benefits Improvement Act of 2008, Pub. L. 110-389, 122 Stat. 4145 (Oct. 10, 2008).

the VA has taken to adjudicate the claim of any single veteran is unreasonably long, but rather alleges that the *average* time the VA has taken to reach initial decisions at the regional office stage, the *average* time the Board takes to resolve appeals, and the *average* time it takes the regional offices to resolve claims remanded by the Board are all unreasonably long. The plaintiffs, moreover, actually disavow any intention of seeking relief in any individual claim by stating, "[t]o the extent any of the facts presented herein apply to individuals rather than to veterans as a whole, they are intended for illustrative purposes only. Nothing in this complaint is intended as, nor should it be construed as, an attempt to obtain review of an individual determination by the VA or its appellate system."

The district court denied the plaintiffs' motion for a preliminary injunction and, in a published order, granted the VA's motion to dismiss on the grounds that plaintiffs lacked standing because they sought to impose on the VA a "uniform timeline for assessing these claims even though the claims are not monolithic." And the court stated that the plaintiffs were not "likely to have the injuries redressed by a favorable decision due to the plaintiffs' *failure to state a claim with respect to* a violation of the APA or the Due Process Clause." (emphasis added).

II

Appellants contend that the district court conflated the merits of the case with standing. We agree. Whether or not plaintiffs stated a claim – whether they had a cause of action – goes to the merits of the case and, as we have held, the merits must be assumed when considering standing. *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam). That is not what is meant by redressability – the element of standing

that is virtually always merely the reciprocal of causation. *Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997). As a separate element, it is implicated only when the court's power to redress an injury caused by an illegal act is independently impaired. *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1278 (D.C. Cir. 2007).

But the government raises other jurisdictional arguments. Perhaps most prominent is its contention that § 511 precludes district court (and our) jurisdiction because appellants are essentially challenging the Secretary's conclusions of "law and fact necessary to a [benefits] decision." Appellants respond that they are not challenging the Secretary's actual decision in any case, but rather his failure to decide cases in a timely manner. Yet, one might think that inherent in any adjudicatory decisionmaking process is an implicit determination as to when the decision maker will get to the case. And in this situation we are not dealing with a true judicial-like role, but rather institutional decisionmaking by a huge department, implicating resource allocation and management practices in which necessarily the pace of decisionmaking would have had to be addressed. Whether looking at an individual case or a mass of cases, a decision or decisions as to when to issue opinions would appear to be a preliminary decision necessary to a final decision – and although more precisely an administrative determination, it would seem to be covered by the broad cloak "law and fact" phrase of § 511.

The government points to two of our cases in support, *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000) (per curiam) and *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005). In *Thomas*, a veteran claimed the VA had failed to provide him medical benefits to which he was entitled. But the VA had decided he was not entitled to those benefits, so clearly he was seeking to

challenge a decision of the Secretary. *Id.* at 975. In *Price*, however, another case involving a claim for medical benefits, we noted that "[t]he record does not reflect whether Price pursued a formal reimbursement claim with the VA. Nevertheless, because Price is challenging the VA's action *or inaction* with respect to a veterans' benefits matter, the district court lacked subject matter jurisdiction over the complaint." 228 F.3d at 421 (emphasis added). We stated broadly then, and repeated in *Thomas*, that § 511 barred a suit that challenged whether the VA "acted properly" in making a benefit determination. *Id.*; 394 F.3d at 975. That formulation would appear to foreclose appellants' recourse to our court.

Appellants, however, point to another case of ours, *Broudy v. Mather*, 460 F.3d 106 (D.C. Cir. 2006), which seems to support their position. In *Broudy*, we held that § 511 did not bar a suit in our district court by veterans whose claim was that officials at the Department of Defense and the VA had provided faulty information concerning the plaintiffs' alleged exposure to radiation while serving in Japan – the true information was allegedly "covered up" – and, as a result, the plaintiff's benefits had been denied. *Id.* at 109-10. We distinguished *Price* and *Thomas* as cases in which the VA (the Secretary) had actually made decisions that the plaintiff veterans were not entitled to benefits and the plaintiffs were seeking a review of those decisions, whereas in *Broudy*, the "Secretary" (really the Board) never made a decision on the issues presented by the plaintiffs – whether officials subordinate to the Secretary had covered up relevant data – because that precise issue had not been presented to the Secretary (the Board). We indicated that only questions "*explicitly* considered" by the Secretary would be barred by § 511, not questions he could be "deemed to have decided" or, presumably, implicitly decided. *Id.* at 114 (emphasis added). Appellants urge that neither the Secretary or the Board has

explicitly considered whether the delays alleged in this case violate the law and so their claims are not precluded.[5]

Undeniably, as the government suggested, there is tension between *Price* and *Thomas* on the one hand and *Broudy* on the other – particularly in light of our recognition in *Price* that the record did not even indicate whether the plaintiff had actually brought his reimbursement claim. (Moreover, as an added point in the government's favor, we note that § 511 expressly precludes a mandamus action – the common law writ designed to deal with unreasonable delay.) We need not seek to resolve the tension between our cases, however, because we perceive another jurisdictional ground upon which we may more comfortably rely.

The government contends that a second jurisdictional defect undermines appellant's case – that APA Section 704 precludes the suit because that section authorizes review only if a party lacks an adequate remedy, and as the government contends, any veteran can bring an unreasonable delay action in the CAVC. Both the Sixth and Eighth Circuits have denied veterans claims on just this basis. *See, e.g.*, *Beamon v. Brown*, 125 F.3d 965, 967-70 (6th Cir. 1997); *In re Russell*, 155 F.3d 1012, 1013 (8th Cir. 1998) (per curiam). Indeed, this conclusion – whether or not jurisdictional (the Sixth Circuit thought it was) – appears to be unassailable as the CAVC possesses the exact same authority to deal with excessive delay in its statute that district courts have

---

[5] In reaching this conclusion we relied on the Federal Circuit's opinion in *Hanlin v. United States*, 214 F.3d 1319 (Fed. Cir. 2000).

under the APA.  *Compare* 38 U.S.C. § 7261(a)(2) *with* 5 U.S.C. § 706(1).[6]

To be sure, the question of whether the plaintiffs could have pursued individual due process claims on behalf of their members is somewhat different.  Still a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim; indeed, if there is any difference at all, it is that an unreasonable delay claim would likely be triggered *prior to* a delay becoming so prolonged that it qualifies as a constitutional deprivation of property.  *See Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) (explaining that a due process claim premised on delay occurs when "delay . . . ripen[s] into deprivation").  For

---

[6] In response to questions raised at oral argument, plaintiffs submitted a Rule 28(j) letter in which they contended that the CAVC's authority to compel unreasonably delayed VA action would not be an adequate alternative remedy even for claims brought by individual veterans.  Plaintiffs argue that because the CAVC only has jurisdiction of final decisions by the Board of Veterans' Appeals, the CAVC is powerless to order the VA to act when the veteran is still waiting for a decision.  But the CAVC has power to issue writs of mandamus compelling VA officials to take action that has been unreasonably delayed even if there has been no final decision by the Board.  *See, e.g.*, *Erspamer v. Derwinski*, 1 Vet. App. 3, 6-9 (Ct. Vet. App. 1990).  And it can hardly be contended that the CAVC's power to compel delayed action through mandamus is an inadequate alternative to a district court's power to compel delayed agency action under the APA – the standards for obtaining relief are essentially the same.  *See In re Core Communications Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) ("The central question in evaluating a claim of unreasonable delay [under the APA] is whether the agency's delay is so egregious as to warrant mandamus.") (quotation omitted).

11

much the same reasons that courts do not tolerate litigants' artful attempts to avoid the Court of Federal Claims by phrasing complaints as seeking injunctive relief when a money judgment would provide an adequate remedy, *see Consolidated Edison v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (collecting cases), it seems unlikely plaintiffs would be permitted to pursue due process claims in district court that are no different (they may be even more difficult to establish) than unreasonable delay claims that must be brought in the CAVC.

If plaintiffs were able to circumvent the CAVC's jurisdiction by creative pleading, district courts would be forced to issue unnecessary constitutional decisions when a statutory ground for the decision would do.  Plaintiffs would be able to seek the same exact relief in multiple fora – bringing the due process claim in the district court and the unreasonable delay claim in the CAVC – despite the general rule proscribing the splitting of a cause of action.  *See, e.g.*, *Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 117 (D.C. Cir. 1982). Absent some indication Congress intended such a strange result, we think it doubtful it should be sanctioned.  As we recognized in *Environmental Defense Fund v. Reilly*, 909 F.2d 1497, 1507 & n.119 (D.C. Cir. 1990), the "rule proscribing the splitting of an indivisible cause of action" is one of several rules "designed to minimize expense and inconvenience to litigants and conserve the finite resources of the courts," and that "[a]bsent plain statutory language or convincing indication to the contrary" federal courts should not presume Congress wished to uproot such principles.  *See also Doleman v. Levine*, 295 U.S. 221, 226 (1935) ("But the [statute] does not purport to split the cause of action. A purpose to do violence to the firmly grounded tradition of the unity of a cause of action at law, by casting on the defendant the burden of defending two suits, is hardly to be implied.").  Thus assuming an APA claim based on

unreasonable delay must be brought in the CAVC, we think it virtually inevitable that it would be held that the CAVC has exclusive jurisdiction to hear due process claims premised on the same delay.[7]

Our discussion of this issue is tentative, however, because again we encounter some conflict in our own opinions – this time as to whether the APA's reviewability provision (§ 704) is jurisdictional and, therefore, whether it is properly considered anterior to any merits questions. In a line of our cases stretching from the 1980s to 2005, we repeatedly stated – and held – that the APA's reviewability provisions were jurisdictional.[8] We did

---

[7] Nor do we think *Webster v. Doe*, 486 U.S. 592 (1988) requires that the district court remain open to the constitutional claim. In that case, a former CIA employee alleged that he was fired because he was a homosexual and that this violated the Administrative Procedure Act and the Constitution. The Supreme Court held that although he could not obtain judicial review under the APA because such decisions were committed to the agency's discretion by law, *id.* at 600-01, a court could review constitutional claims based on the same allegation. The court explained that without a clear statement from Congress that it intended to do so, the Court would avoid the "serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* at 603. That constitutional question avoided by the Court in *Doe* would not be a factor here – even if review of the due process claim is not available in the district court, the CAVC could still hear it (as well as the essentially identical unreasonable delay claim). *See Beamon*, 125 F.3d at 969.

[8] *See Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 746 (D.C. Cir. 1987) (opinion of Williams, J.); *Public Citizen v. Office of the U.S. Trade Reps.*, 970 F.2d 916, 918 (D.C. Cir. 1992); *DRG Funding Corp. v. Sec'y of HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996); *Indep.*

so notwithstanding a footnote in a Supreme Court opinion, *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991), observing that the judicial review provisions of the APA are not jurisdictional.[9]

Nevertheless, in 2006, we changed course in *Center for Auto Safety v. NHTSA*, 452 F.3d 798, 805 (D.C. Cir. 2006), followed a month later by *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006).[10] In both cases we relied on a party's argument in a previous case, *Reliable Automatic Sprinkler v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003), in which we actually declined to resolve the issue. And in *Trudeau*, we referred to our previous line of cases as only "loosely" referring to the APA's review provision as jurisdictional. 456 F.3d at 184. *Trudeau* also relied upon *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). While not an APA case, *Arbaugh* did state that statutes should be treated as nonjurisdictional unless Congress clearly indicates otherwise, thus further undermining our jurisdictional holdings. *Id.* at 515-16. We think the proposition that the review provisions of the APA are not jurisdictional is now firmly established. We therefore pass on to another

---

*Petroleum Ass'n v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).

[9] The Supreme Court relied on *Califano v. Sanders*, 430 U.S. 99 (1977) for this proposition. But *Califano* held only that the APA generally does not afford an implied grant of subject-matter jurisdiction. *Id.* at 107.

[10] The court does have a method – the *Irons* footnote – which allows the full court to endorse such a reversal of course without full *en banc* rehearing. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981).

jurisdictional difficulty, a variation of the standing issue upon which the district court rested.

It is settled law that an association has standing to sue only if at least one member would have standing on his or her own right. *Young America's Foundation v. Gates*, 573 F.3d 797, 799 (D.C. Cir. 2009). Appellants produced affidavits of members whose cases were pending – in their view, much too long – to establish injury.[11] Yet appellants, in a rather apparent effort to avoid the preclusive bite of both § 511 and § 704, went out of their way to forswear any individual relief for the affiants. Indeed, the asserted illegal action the VA has committed is described as the *average* length of time it takes at each stage of the claims process. But the average processing time does not cause affiants injury; it is only *their* processing time that is relevant. If, for example, affiants fell at the quick-processing end of a bell-shaped curve, a high average processing time would be irrelevant to them, and to reverse the analysis, a low average would not avoid injury if affiants were at the other end of the curve. In sum, assuming the alleged illegality – that the average processing time at each stage is too long – that "illegality" does not cause the affiants injury. And causation is a necessary element of standing. *Young America's Foundation*, 573 F.3d at 799.

---

[11] The plaintiffs' affidavits also reference members whose claims have been fully processed and identify negative effects they suffered while they waited for a decision. But veterans whose claims have already been processed would no longer have standing to seek the declaratory and injunctive relief plaintiffs seek in this case. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983).

If the affiants were suing by themselves – which is how we must analyze the claim – asserting that the average time of processing was too long, it would be apparent that they were presenting a claim not for themselves but for others, indeed, an unidentified group of others.  But one can not have standing in federal court by asserting an injury to someone else.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108-09 (1983).  It seems the district judge intuited this point by noting the claims were "not monolithic."

For the foregoing reasons, the district court's order granting the motion to dismiss is affirmed.

*So ordered.*