**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VETERANS FOR COMMON SENSE, a
District of Columbia nonprofit
organization; VETERANS UNITED FOR
TRUTH, INC., a California nonprofit
organization, representing their
members and a class of all
veterans similarly situated,
                    *Plaintiffs-Appellants,*

                    v.

ERIC K. SHINSEKI, Secretary of
Veterans Affairs; UNITED STATES
DEPARTMENT OF VETERANS AFFAIRS;
STEVEN L. KELLER, Acting
Chairman, Board of Veterans'
Appeals; ALLISON A. HICKEY,
Under Secretary, Veterans Benefits
Administration; BRADLEY G.
MAYES, Director, Compensation
and Pension Service; ROBERT A.
PETZEL, Under Secretary, Veterans
Health Administration; ULRIKE
WILLIMON, Veterans Service Center
Manager, Oakland Regional
Office, Department of Veterans
Affairs; UNITED STATES OF
AMERICA,
                    *Defendants-Appellees.*

No. 08-16728

D.C. No.
3:07-cv-03758-SC

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

4823

Argued and Submitted En Banc
December 13, 2011—San Francisco, California

Filed May 7, 2012

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Sidney R. Thomas, Susan P. Graber, M. Margaret McKeown,
Kim McLane Wardlaw, Johnnie B. Rawlinson, Jay S. Bybee,
Consuelo M. Callahan, Sandra S. Ikuta, and N. Randy Smith,
Circuit Judges.

Opinion by Judge Bybee;
Dissent by Judge Schroeder

## COUNSEL

Gordon P. Erspamer, Morrison & Foerster LLP, San Francisco, California, for the plaintiffs-appellants.

Charles W. Scarborough, United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for the defendants-appellees.

## OPINION

BYBEE, Circuit Judge:

After a decade of war, many of our veterans are returning home with physical and psychological wounds that require competent care. Faced with the daunting task of providing that care, as well as adjudicating the claims of hundreds of thousands of veterans seeking disability benefits, the Department of Veterans Affairs ("VA")[1] is struggling to provide the care and compensation that our veterans deserve. *See, e.g.*, *Review of Veterans' Claims Processing: Are Current Efforts Working? Hearing Before the S. Comm. on Veterans' Affairs*, 111th Cong. 9 (2010) (statement of Michael Walcoff, Acting Under Secretary for Benefits, U.S. Dep't of Veterans Affairs) ("Secretary Shinseki, the Veterans Benefits Administration (VBA), and the entire VA leadership fully share the concerns of this Committee, Congress as a whole, the Veterans Service Organizations (VSOs), the larger Veteran community, and the American public regarding the timeliness and accuracy of disability benefit claims processing.").

Two nonprofit organizations, Veterans for Common Sense and Veterans United for Truth (collectively "VCS"), ask us to remedy delays in the provision of mental health care and the adjudication of service-connected disability compensation claims by the VA. VCS's complaint leaves little doubt that affording VCS the relief it seeks would require the district court to overhaul the manner in which the VA provides mental health care and adjudicates claims for benefits. VCS would have the district court, among other things, order the implementation of new procedures for handling mental health care

---

[1]In 1988, Congress reorganized the Veterans Administration as a cabinet-level executive department and redesignated it as the Department of Veterans Affairs. Department of Veterans Affairs Act, Pub. L. No. 100-527, 102 Stat. 2635 (1988). As used here, "VA" may refer to the Department and its predecessor, the Veterans Administration.

requests, create an accelerated appeals process for claims, and convert the claims-adjudication process into an adversarial proceeding.

We conclude that we lack jurisdiction to afford such relief because Congress, in its discretion, has elected to place judicial review of claims related to the provision of veterans' benefits beyond our reach and within the exclusive purview of the United States Court of Appeals for Veterans Claims and the Court of Appeals for the Federal Circuit. *See* 38 U.S.C. §§ 511, 7252, 7292; *see also Yakus v. United States*, 321 U.S. 414, 443 (1944). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). We conclude that the majority of VCS's claims must be dismissed for lack of jurisdiction. And where we do have jurisdiction to consider VCS's claims, we conclude that granting VCS its requested relief would transform the adjudication of veterans' benefits into a contentious, adversarial system— a system that Congress has actively legislated to preclude. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 323-24 (1985). The Due Process Clause does not demand such a system.

As much as we as citizens are concerned with the plight of veterans seeking the prompt provision of the health care and benefits to which they are entitled by law, as judges we may not exceed our jurisdiction. We conclude that the district court lacked jurisdiction to resolve VCS's claims for system-wide implementation of the VA's mental health care plans, as well as VCS's request for procedures intended to address delays in the provision of mental health care. We similarly determine that the district court lacked jurisdiction to consider VCS's statutory and due process challenges to delays in the system of claims adjudication. We do conclude, however, that the district court had jurisdiction to consider VCS's claims related

to the adjudication procedures in VA Regional Offices and that the district court properly denied those claims on the merits.

We therefore affirm the district court in part, reverse in part, and remand with instructions to dismiss the case.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

There are approximately 25 million veterans in the United States and, as of May 2007, between 5 and 8 million of those veterans were enrolled with the VA.[3] A significant number of veterans, many of whom have returned recently from operations in Iraq and Afghanistan, suffer from service-related disabilities, and therefore seek mental health care from the Veterans Health Administration ("VHA") and disability compensation from the Veterans Benefits Administration ("VBA").[4]

### A.   *The Suit*

In 2007, two nonprofit organizations, Veterans for Common Sense and Veterans United for Truth, filed suit in the Northern District of California. On behalf of themselves, their members, and a putative class of veterans with post-traumatic stress disorder ("PTSD") eligible for or receiving medical services, and veterans applying for or receiving service-

---

[2]Parts of this opinion are drawn from the three-judge panel majority's opinion. The panel's contribution should be noted and is appreciated.

[3]The district court found these facts. We take judicial notice of current official figures provided by the VA: 23 million veterans, a third of whom are enrolled for health care with the VHA and of whom 3 million receive disability benefits. *See* Nat'l Ctr. for Veterans Analysis of Statistics, VA Benefits & Health Care Utilization (July 30, 2010), *available at* http://www.va.gov/VETDATA/Pocket-Card/4X6_summer10_sharepoint .pdf.

[4]The VA is divided into three branches: the Veterans Benefits Administration, Veterans Health Administration, and the National Cemetery Administration.

connected disability benefits, VCS seeks sweeping declaratory and injunctive relief. Such relief is warranted, VCS alleges, because the VA's handing of mental health care and service-related disability claims deprives VCS of property in violation of the Due Process Clause of the Constitution and violates the VA's statutory duty to provide timely medical care and disability benefits. VCS specifically disavows seeking relief on behalf of any individual veteran, but instead challenges "average" delays in the VA's provision of mental health care and disability benefits. Compl. ¶¶ 12, 38-39. We briefly summarize VCS's claims.

First, with respect to the VHA's duty to provide veterans with mental health care, VCS challenges VHA procedures that allegedly result in delayed care. *Id*. ¶¶ 31, 184-200, 277. VCS also challenges the lack of procedures for veterans to expedite that care. *Id*. ¶¶ 31, 277. VCS therefore asked the district court to declare, among other things, that the lack of procedures to remedy delays in the provision of medical care and treatment violates due process. *Id*. ¶¶ 31, 258-60. VCS also seeks to enjoin the VA from permitting protracted delays in the provision of mental health care and to compel the VHA to implement governmental recommendations for improving the provision of mental health care.[5] *Id*. ¶¶ 31, 277.

Second, VCS challenges VBA delays in the adjudication and resolution of disability-compensation claims under both the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment. *Id*. ¶¶ 31, 145-83, 277. VCS asserts that the adjudication of those claims, which begins at one of the VA's 57 Regional Offices and proceeds through the Board of Veterans' Appeals, the Court of Appeals

---

[5]Those recommendations are found in the VA's 2004 Mental Health Strategic Plan ("Plan") and a June 2007 memorandum from the then-Deputy Under Secretary for Health Operations and Management, William Feeley. Both documents set out specific recommendations intended to improve the VA's provision of mental health care services to veterans.

for Veterans Claims ("Veterans Court"),[6] an Article I court, 38 U.S.C. §§ 7251, 7266(a), and the Federal Circuit, 38 U.S.C. § 7292(a), is plagued by unreasonable delays that result in a functional denial of benefits. Compl. ¶¶ 31, 145-83, 277. VCS therefore seeks both declaratory and injunctive relief to remedy those delays. *Id.* ¶ 277.

Finally, VCS challenges the constitutionality of numerous VBA practices and procedures, including the absence of trial-like procedures at the VA's Regional Offices. *Id.* ¶¶ 30, 201-03, 262-63. VCS also seeks to enjoin the VBA from prematurely denying PTSD and other service-connected disability compensation claims. *Id.* ¶¶ 31, 277.[7]

B.  *The District Court Denies VCS Relief*

After the district court denied in large part the VA's motion to dismiss, VCS requested a preliminary injunction on its mental health claims. The district court held an evidentiary hearing, but deferred ruling on the preliminary injunction, instead merging the request with a bench trial on the merits that would address all of VCS's claims.[8]

The district court held a seven-day bench trial and, two months later, issued a comprehensive Memorandum of Deci-

---

[6]The court as initially established was called the United States Court of Veterans Appeals. The name was later changed by the Veterans Programs Enhancement Act of 1998 to the U.S. Court of Appeals for Veterans Claims. Pub. L. No. 105-368, § 511, 112 Stat. 3315, 3341.

[7]In its complaint, VCS brought other challenges to VA procedures, including a challenge to the absence of class action procedures in the adjudication of benefits claims, as well as a challenge arguing that VA practices deny veterans access to the courts. Compl. ¶¶ 202, 261-63. VCS, however, appears to have abandoned these claims on appeal, and thus we address only those claims that VCS has preserved on appeal.

[8]VCS objected to the trial schedule, as well as the limitations on discovery the district court imposed, and the district court overruled those objections.

sion, Findings of Fact and Conclusions of Law. *See Veterans for Common Sense v. Peake* ("*Veterans*"), 563 F. Supp. 2d 1049 (N.D. Cal. 2008). The district court denied VCS's various claims and concluded that ordering the relief requested by VCS would draw the district court into resolving when and how care is provided—a role that it was not equipped to undertake. *Id.* at 1080-82. First, with respect to the VHA's provision of mental health care, the district court rejected VCS's challenge because VCS failed to identify a discrete, final agency action that the VA was required to take. *Id.* at 1082-83; *see* 5 U.S.C. § 706(1); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). Similarly, the district court rejected VCS's due process claims challenging the VA's failure to provide timely and effective mental health care because the VA's health care system reflected "an appropriate balance between safeguarding the veteran's interest in medical treatment and permitting medical treatment without overly burdensome procedural protections." *Veterans*, 563 F. Supp. 2d at 1082.

With respect to the VBA's administration of service-related disability compensation, the district court denied VCS relief on the grounds that both 38 U.S.C. § 511 and § 502 precluded its review. The court reasoned that, because "[t]he issue . . . of whether a veteran's benefit[s] claim adjudication has been substantially delayed will often hinge on specific facts of that veteran's claim," it lacked jurisdiction under 38 U.S.C. § 511(a) to review the causes of delayed adjudication. *Id.* at 1083-84. It likewise found that ordering the VBA to remedy delays by implementing new procedures would "invariably implicate VA regulations," review of which may be conducted only by the Federal Circuit under 38 U.S.C. § 502. *Id.* at 1084. The district court, however, reached the merits of VCS's disability-based claims, but concluded that neither delays in the VBA's Regional Offices' adjudication of disability-related claims, nor the lack of trial-like protections for veterans raising such claims, was unreasonable under the APA or violative of due process. *Id.* at 1085-86. The district

court therefore denied VCS's request for a permanent injunction and declaratory relief, and granted judgment in favor of the VA. *Id.* at 1092.

VCS appealed. A panel of this court, by a 2-1 majority, reversed on the constitutional claims. *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 878 (9th Cir. 2011). The panel affirmed the district court's conclusion that the VA's procedures at its Regional Offices satisfied due process. *Id.* at 887-88. We granted the VA's petition for rehearing en banc. *Veterans for Common Sense v. Shinseki*, 663 F.3d 1033 (9th Cir. 2011).

## II.    JURISDICTION

Before we may address VCS's claims on the merits, we must consider the government's argument that the Veterans' Judicial Review Act, Pub. L. No. 100-687, div. A, 102 Stat. 4105 (1988) ("VJRA"), codified at various sections in Title 38, deprives us of jurisdiction over these claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that a court must have jurisdiction to reach the merits). We first review the history of the VJRA and Congress's long-held concern with judicial intrusion into the VA's handling of veterans' requests for benefits. We then consider the way in which the courts have construed the provision in the VJRA that precludes review of VA decisions, 38 U.S.C. § 511.

### A.    *Jurisdiction over Veterans Benefits*

Article III confers "[t]he judicial Power of the United States" on a supreme court and "such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. The "judicial Power" vested in such courts "extend[s] to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made." *Id*. art. III, § 2, cl. 1. Article III is not self-executing, however, so the jurisdiction of inferior federal courts depends

on an affirmative statutory grant. *See United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812) ("[Only] the Supreme Court[ ] possesses jurisdiction derived immediately from the constitution, and of which the legislative power cannot deprive it. All other Courts created by the general Government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general Government will authorize them to confer."). Article III's "federal question jurisdiction" is statutorily conferred on federal district courts in 28 U.S.C. § 1331, which VCS cites as the source of the district court's jurisdictional authority. That section provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But the fact that federal courts are vested with such jurisdiction over "all civil actions" does not mean that all federal courts may exercise jurisdiction over all such civil actions. The Constitution also grants to Congress the power to control federal court jurisdiction through "such Exceptions, and under such Regulations as the Congress shall make." U.S. Const. art. III, § 2, cl. 2; *see Palmore v. United States*, 411 U.S. 389, 400-01 (1973) (holding that Congress is not required to vest inferior federal courts "with all the jurisdiction it was authorized to bestow under Art. III"). And Congress is under no obligation to confer jurisdiction upon inferior federal courts equally; indeed, no court "can assert a just claim to jurisdiction exclusively conferred on another, or withheld from all." *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies. Courts created by statute can have no jurisdiction but such as the statute confers.").

In cases involving benefits owed to veterans, Congress has created a scheme conferring exclusive jurisdiction over claims affecting veterans' benefits to some federal courts, while denying all other federal courts any jurisdiction over such claims. The source of that statutory scheme is the Veterans'

Judicial Review Act of 1988. To understand the import of the VJRA, and how it affects our jurisdiction to consider VCS's claims here, it is helpful to examine the history of judicial review of VA decisions.

### 1.   History of Judicial Review

Our discussion will be brief because the history of judicial review of VA decisionmaking is a short one. Congress established the VA in 1930. Act of July 3, 1930, ch. 863, § 1, 46 Stat. 1016, 1016. Three years later, Congress prohibited judicial review of the VA's benefits decisions. Act of Mar. 20, 1933, ch. 3, § 5, 48 Stat. 8, 9 ("All decisions rendered by the Administrator under . . . this title, or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review . . . any such decision."); *see also Lynch v. United States*, 292 U.S. 571, 587 (1934) (construing the statute to "remove the possibility of judicial relief"). Congress has "consistently precluded judicial review of veterans' benefits determinations" thereafter. *Larrabee ex rel. Jones v. Derwinski*, 968 F.2d 1497, 1499 (2d Cir. 1992).

Over time, however, exceptions to the preclusion provision began to appear. This development occurred most notably in the D.C. Circuit, *see, e.g.*, *Tracy v. Gleason*, 379 F.2d 469, 472-73 (D.C. Cir. 1967), where a "procession of decisions . . . 'significantly narrow[ed] the preclusion statute' " and limited its application to bar review of challenges related to initial filing of claims. *Larrabee ex rel. Jones*, 968 F.2d at 1500 (quoting Note, *Judicial Review of Allegedly* Ultra Vires *Actions of the Veterans' Administration: Does 38 U.S.C. § 211(a) Preclude Review?*, 55 Fordham L. Rev. 579, 596 (1987) (alteration in original)). In response to the D.C. Circuit's "fairly tortured construction" of the jurisdictional limitation, in 1970 Congress reemphasized its "clear" intent that the "exemption from judicial review . . . be all inclusive," and it amended the

statute to "provide that except for certain contractual benefits, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration" shall be unreviewable. H.R. Rep. No. 91-1166 at 10 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3723, 3730-31. The result was 38 U.S.C. § 211,[9] the precursor to § 511, which we construe here.

Four years later, the Supreme Court interpreted § 211 in the context of an equal protection challenge to statutes related to veterans' benefits. *Johnson v. Robison*, 415 U.S. 361 (1974). The Supreme Court held that § 211 precluded only review of decisions "that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans." *Id.* at 367 (emphasis added). Declaring that construing § 211 to eliminate all federal court review of constitutional challenges to veterans' benefits legislation would raise "serious questions concerning the constitutionality of § 211," and invoking the constitutional avoidance doctrine, the Court construed § 211 to allow federal court review of a challenge to the constitutionality of the statute itself. *Id.* at 366-67. The *Robison* Court therefore concluded that district courts had jurisdiction to consider a direct facial challenge to statutes affecting veterans' benefits. *Id.* at 367.

Fourteen years after deciding *Robison*, the Supreme Court revisited the jurisdictional limitations of § 211 in *Traynor v. Turnage*, 485 U.S. 535 (1988). There, the Court held that

---

[9]That section provided:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211(a) (1970).

§ 211 did not bar federal courts from reviewing whether the VA's regulations conflicted with § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which requires that federal programs not discriminate against handicapped individuals solely because of their handicap. *Traynor*, 485 U.S. at 545. Section 211(a), the Court said, "insulates from review decisions of law and fact . . . made in interpreting or applying a particular provision of that statute to a particular set of facts." *Id.* at 543. The Court noted that the VA had no "special expertise in assessing the validity of its regulations" against "a later passed statute of general application." *Id.* at 544. The Court doubted that permitting federal court review would interfere with the VA or burden the agency with "expensive and time-consuming litigation." *Id.* (internal quotation marks omitted). The Court invited the VA to "seek[ ] appropriate relief from Congress" if "experience proves otherwise." *Id.* at 544-45.

2.   The Veterans' Judicial Review Act

Congress responded almost immediately to the Court's invitation in *Traynor.* For Congress, *Traynor* threatened to increase the judiciary's involvement in "technical VA decision-making." *See* H.R. Rep. No. 100-963, at 20-21, 27 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5802-03, 5809-10. In order to dissuade the judiciary from ignoring "the explicit language that Congress used in isolating decisions of the Administrator from judicial scrutiny," *id.* at 21, 1988 U.S.C.C.A.N. at 5802, Congress overhauled both the internal review mechanism and § 211 in the VJRA. Pub. L. No. 100-687, 102 Stat. 4105.

**[1]** The VJRA made three fundamental changes to the procedures and statutes affecting review of VA decisions. First, the VJRA placed responsibility for reviewing decisions made by VA Regional Offices and the Board of Veterans' Appeals in a new Article I court, the United States Court of Appeals for Veterans Claims. 38 U.S.C. §§ 7251, 7261. As Congress explained, the creation of the Veterans Court was "intended

to provide a more independent review by a body which is not bound by the Administrator's view of the law, and that will be more clearly perceived as one which has as its sole function deciding claims in accordance with the Constitution and laws of the United States." H.R. Rep. No. 100-963, at 26, 1988 U.S.C.C.A.N. at 5808. The statute also "provide[d] claimants with an avenue for the review of VA decisions that would otherwise have been unreviewable" under prior veterans-related legislation. *Beamon v. Brown*, 125 F.3d 965, 972 (6th Cir. 1997).

Congress indicated that the Veterans Court's authority would extend to "*all* questions involving benefits under laws administered by the VA. This would include factual, legal, and constitutional questions." H.R. Rep. No. 100-963, at 5, 1988 U.S.C.C.A.N. at 5786 (emphasis added). To that end, Congress conferred on the Veterans Court "*exclusive* jurisdiction" to review decisions of the Board of Veterans' Appeals, 38 U.S.C. § 7252(a) (emphasis added), and its powers include the authority to decide any question of law relevant to benefits proceedings, *id.* § 7261(a)(1), and "compel action of the Secretary unlawfully withheld or unreasonably delayed," *id.* § 7261(a)(2). The Veterans Court also has authority under the All Writs Act to issue "writs necessary or appropriate in aid of [its] jurisdiction[ ]." 28 U.S.C. § 1651(a); *see also Erspamer v. Derwinski*, 1 Vet. App. 3, 7 (1990) (holding "that this court has jurisdiction to issue extraordinary writs under the All Writs Act").

Second, decisions of the Veterans Court are reviewed exclusively by the Federal Circuit, which "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(a), (c), (d)(1).[10] Although the Federal Circuit may not review factual determi-

---

[10]The VJRA also vested the Federal Circuit with exclusive jurisdiction over challenges to VA rules, regulations, and policies. 38 U.S.C. §§ 502, 7292.

nations, it may review the application of law to facts if a constitutional issue is implicated. *Id.* § 7292(d)(2). The decisions of the Federal Circuit are final and only "subject to review by the Supreme Court upon certiorari." *Id.* § 7292(c). As the Second Circuit observed, "[b]y providing judicial review in the Federal Circuit, Congress intended to obviate the Supreme Court's reluctance to construe [§ 211] as barring judicial review of substantial statutory and constitutional claims, while maintaining uniformity by establishing an exclusive mechanism for appellate review of decisions of the Secretary." *Larrabee ex rel. Jones*, 968 F.2d at 1501 (citations omitted).

Third and finally, Congress expanded the provision precluding judicial review, formerly § 211. Under the new provision, eventually codified at 38 U.S.C. § 511,[11] the VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a).[12] Whereas § 211(a) prohibited review of "decisions . . . under any law . . . providing benefits for veterans," 38 U.S.C. § 211(a) (1970), § 511(a) prohibits review of "all questions of law and fact necessary to a decision . . . that affects the provision of benefits," 38 U.S.C. § 511(a) (2006). With this change, Congress intended to "broaden the scope of section 211" and limit

---

[11]Section 211 was recodified as § 511 by the Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, 105 Stat. 378 (1991). We will refer to the pre-VJRA provision as § 211 and the post-VJRA provision as § 511.

[12]38 U.S.C. § 511(a) states in full:

The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

outside "court intervention" in the VA decisionmaking process. *See* H.R. Rep. No. 100-963, at 27, 1988 U.S.C.C.A.N. at 5809; *see also Larrabee ex rel. Jones*, 968 F.2d at 1501 ("The VJRA . . . broadens section 211's preclusion of judicial review by other courts."). The nonreviewability provision in § 511(a) is subject to four exceptions, one of which is relevant here and we have previously discussed: The Veterans Court and the Federal Circuit may review the Secretary's decisions regarding veterans' benefits. 38 U.S.C. § 511(b)(4); *see id.* §§ 7252, 7292.

**[2]** In sum, the VJRA supplies two independent means by which we are disqualified from hearing veterans' suits concerning their benefits. First, Congress has expressly disqualified us from hearing cases related to VA benefits in § 511(a) ("may not be reviewed by any . . . court"), and second, Congress has conferred exclusive jurisdiction over such claims to the Veterans Court and the Federal Circuit, *id.* §§ 511(b)(4), 7252(a), 7292(c). The provisions may not be co-extensive, so if a claim comes within either provision, the district court is divested of jurisdiction that it otherwise might have exercised under 28 U.S.C. § 1331, and we are divested of any power of appellate review. *See* H.R. Rep. No. 100-963, at 28, 1988 U.S.C.C.A.N. at 5810 ("By vesting jurisdiction of challenges brought under the APA solely in the Court of Appeals for the Federal Circuit, the bill deprives United States District Courts of jurisdiction to hear such matters under 28 U.S.C. 1331."). Together, these provisions demonstrate that Congress was quite serious about limiting our jurisdiction over anything dealing with the provision of veterans' benefits.

B.   *Judicial Construction of § 511*

We have had limited opportunity to address the scope of the jurisdictional limitation in § 511. In *Chinnock v. Turnage*, we noted that § 511 precluded our review of the VA's interpretation of a regulation that affected the denial of a veteran's disability benefits. 995 F.2d 889, 893 n.2 (9th Cir. 1993).

Then, in *Hicks v. Small*, we concluded that § 511 prevented us from considering a veteran's state tort claims brought against a VA doctor because adjudication of those claims "would necessitate a 'consideration of issues of law and fact involving the decision to reduce Hicks' benefits,' a review specifically precluded by 38 U.S.C. § 511(a)." 69 F.3d 967, 970 (9th Cir. 1995) (quoting *Hicks v. Small*, 842 F. Supp. 407, 413-14 (D. Nev. 1993)). And in *Littlejohn v. United States*, we concluded that, although "the Federal Circuit [is] the only Article III court with jurisdiction to hear challenges to VA determinations regarding disability benefits," we could consider a veteran's Federal Tort Claims Act ("FTCA") claim alleging negligence against VA doctors because doing so would not "possibly have any effect on the benefits he has already been awarded." 321 F.3d 915, 921 (9th Cir. 2003).[13] In neither *Chinnock*, *Hicks*, nor *Littlejohn* did we articulate a clear standard for evaluating our jurisdiction when a party raises claims regarding VA benefits.

[3] Similarly, most other circuits have not articulated a comprehensive test to determine the preclusive contours of § 511. That being said, a survey of cases from various circuits that have analyzed § 511 demonstrates some consistent, largely undisputed conclusions as to what § 511 does (and does not) preclude. In general, review of decisions made in the context of an individual veteran's VA benefits proceedings are beyond the jurisdiction of federal courts outside the review scheme established by the VJRA. This is true even if the veteran dresses his claim as a constitutional challenge, *see Zuspann v. Brown*, 60 F.3d 1156, 1159-60 (5th Cir. 1995) (finding no remedy for alleged constitutional violations because veteran was ultimately "complaining about a denial of benefits"); *Sugrue v. Derwinski*, 26 F.3d 8, 10-11 (2d Cir.

---

[13]The FTCA specifically confers jurisdiction on federal district courts to hear such claims. *See* 28 U.S.C. § 1346(b)(1). We also noted that the VA had separate procedures for dealing with FTCA claims. *See Littlejohn*, 321 F.3d at 921 n.5.

1994) ("[T]he courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms."); *Larrabee ex rel. Jones*, 968 F.2d at 1498 (dismissing veteran's due process challenge where "[t]he gravamen of the amended complaint [was] that the VA ha[d] failed to provide [the veteran] with adequate care"); *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992) (veteran's claim that his benefits were reduced because he exercised his First Amendment rights was ultimately a "challenge to a decision affecting benefits" and precluded by § 511), and even where the veteran has challenged some other wrongful conduct that, although unrelated to the VA's ultimate decision on his claim, affected his or her benefits proceeding, *see Weaver v. United States*, 98 F.3d 518, 519-20 (10th Cir. 1996) (finding no jurisdiction where the claimant sued for conspiracy and fraud, claiming that VA employees concealed his medical records); *cf. In re Russell*, 155 F.3d 1012, 1013 (8th Cir. 1998) (per curiam) (court could not issue writ of mandamus ordering the Board of Veterans' Appeals and Veterans Court to act on veteran's request for benefits). *But see Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992) ("[S]ince the Veterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction . . . .").

The Federal Circuit has also addressed the scope of § 511, albeit primarily in cases that do not involve a veteran's challenge to the VA's administration of benefits. In *Hanlin v. United States*, an attorney sued the VA for attorney's fees in the Court of Federal Claims, claiming a breach of implied contract under a fee arrangement with a veteran. 214 F.3d 1319, 1320 (Fed. Cir. 2000). Although the government argued that § 511 precluded review in that court, the Federal Circuit disagreed, holding that "§ 511(a) does not require the Secretary to address such a claim and thus does not provide the VA with exclusive jurisdiction over [the attorney]'s claim." *Id.* at

1321. Then, in *Bates v. Nicholson*, the Federal Circuit held that a determination of whether to terminate the certification of an attorney to practice before the VA was subject to the jurisdiction of the Board of Veterans' Appeals. 398 F.3d 1355, 1365-66 (Fed. Cir. 2005). Rejecting the concurrence's criticism that its decision needlessly expanded § 511, the court noted that § 511's preclusion "contemplates a formal 'decision' by the Secretary or his delegate" and does not apply to every decision that may indirectly affect benefits. *Id.* at 1365.

The D.C. Circuit, in a series of cases, and the Sixth Circuit, in a case very similar to this one, have articulated the most comprehensive and relevant standard for determining the scope of § 511. *See Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006); *Thomas v. Principi*, 394 F.3d 970, 974 (D.C. Cir. 2005); *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (per curiam); *Beamon*, 125 F.3d at 971. In *Price*, the D.C. Circuit held that § 511 precluded the district court's jurisdiction to consider a veteran's claim for reimbursement of medical expenses because, in order for the court to resolve whether the VA had failed to reimburse the veteran, it "would require the district court to determine first whether the VA acted properly in handling Price's request for reimbursement." 228 F.3d at 422. As the court noted, "courts have consistently held that a federal district court may not entertain constitutional or statutory claims whose resolution would require the court to intrude upon the VA's exclusive jurisdiction." *Id.*[14]

The D.C. Circuit confirmed this analysis in *Thomas*. There, the veteran brought an action under the FTCA in which he alleged that the VA had "failed to render the appropriate medical care services" and thereby denied him "medical care treatment." *Thomas*, 394 F.3d at 975 (internal quotation

---

[14]We previously cited *Price* with approval in *Littlejohn*, 321 F.3d at 921.

marks omitted). Relying on *Price*, the D.C. Circuit held that the relevant test was "whether adjudicating Thomas's claims would require the district court 'to determine first whether the VA acted properly in handling' Thomas's benefits request." *Id.* at 974 (quoting *Price*, 228 F.3d at 422). The court concluded that some of Thomas's tort claims were barred by § 511, while others survived. *Id.* at 974-75.

The D.C. Circuit confirmed this test again in *Broudy*, 460 F.3d at 114-15, and also identified a situation in which § 511 did not preclude its jurisdiction. There, the plaintiffs sued the VA for allegedly withholding radiation test results, effectively denying the plaintiffs access to the courts. *Id.* at 109-10. The plaintiffs requested, among other things, the "immediate release of all relevant records and documents" and an injunction preventing future instances of such misconduct. *Id.* at 110. Distinguishing the case from *Price* and *Thomas*, the D.C. Circuit held that it had jurisdiction to consider the plaintiffs' claims because those claims did not require the district court "to decide whether any of the veterans whose claims the Secretary rejected [we]re entitled to benefits." *Id.* at 115. Nor did their claims require the court to "revisit any decision made by the Secretary *in the course of making* benefits determinations." *Id.* (emphasis added). Thus, the D.C. Circuit concluded that it had jurisdiction. *Id.*

In addition to these cases from the D.C. Circuit, we find a closely analogous case in the Sixth Circuit's decision in *Beamon v. Brown*. In *Beamon*, the plaintiffs claimed that "the VA's procedures for processing claims cause[d] unreasonable delays, thereby violating their rights under the Administrative Procedure Act . . . and under the Due Process Clause of the Fifth Amendment." 125 F.3d at 966. The Sixth Circuit held that "the VJRA explicitly granted comprehensive and exclusive jurisdiction to the [Veterans Court] and the Federal Circuit over claims seeking review of *VA decisions that relate to benefits decisions* under § 511(a)." *Id.* at 971 (emphasis added). The court therefore concluded that it could not hear

"constitutional issues and allegations that a VA decision has been unreasonably delayed" by the inadequacies of the VA's procedures. *Id.* Because adjudicating the plaintiffs' claims would require the district court to "review individual claims for veterans' benefits, the manner in which they were processed, and the decisions rendered by the regional office of the VA" and the Board of Veterans' Appeals, "[t]his type of review falls within the exclusive jurisdiction of the [Veterans Court] as defined by [38 U.S.C.] § 7252(a)." *Id.* at 970-71.

**[4]** Synthesizing these cases, we conclude that § 511 precludes jurisdiction over a claim if it requires the district court to review "VA decisions that relate to benefits decisions," *Beamon*, 125 F.3d at 971, including "any decision made by the Secretary in the course of making benefits determinations," *Broudy*, 460 F.3d at 115. This standard is consistent with Congress's intention to "broaden the scope" of the judicial preclusion provision, H.R. Rep. No. 100-963, at 27, 1988 U.S.C.C.A.N. at 5809, and is reflected in § 511(a)'s plain statement that we may not review a "decision by the Secretary under a law that affects the provision of [veterans'] benefits," 38 U.S.C. § 511(a). This preclusion extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases. *See Price*, 228 F.3d at 422; *Thomas*, 394 F.3d at 974; *Broudy*, 460 F.3d at 114-15; *accord Beamon*, 125 F.3d at 971. If that test is met, then the district court must cede any claim to jurisdiction over the case, and parties must seek a forum in the Veterans Court and the Federal Circuit.

## III.  APPLICATION

In this case, we must determine whether VCS has raised claims that involve "questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary." 38 U.S.C. § 511(a). Under the VA's regulations, "benefit" is defined as "any payment,

service, . . . or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e). Here, VCS claims that delays in the VHA's provision of mental health care and the VBA's adjudication of service-related disability benefits violate the VA's statutory obligations to provide veterans with care and, therefore, deprive veterans of "property" under the Due Process Clause. Mental health care and disability compensation are clearly "benefits," so any "question of fact or law" that "affects the provision of [them] by the Secretary" falls under the ambit of § 511. Accordingly, we turn first to VCS's various mental health claims and then to VCS's disability compensation claims to determine whether the district court had jurisdiction under § 511.

A.    *Mental Health Care Claims*

VCS claims that delays in the VHA's provision of mental health care violate the APA and the Due Process Clause.[15] VCS also requests the adoption of a formal appeals process to allow veterans to challenge an administrator's decision to place a veteran on a wait list for mental health care, more transparent clinical appeals procedures, and an expedited procedure for veterans presenting PTSD symptoms to receive access to mental health care.[16]

---

[15]The district court exercised jurisdiction but denied VCS's APA claim because, among other things, VCS's claim did not pertain to a "final agency action," and thus could not be brought under the APA. *Veterans*, 563 F. Supp. 2d at 1059 (citing *Norton*, 542 U.S. at 64). The district court denied VCS's due process challenge to the VHA's failure to provide timely care on the merits because VCS "did not prove a systemic denial or unreasonable delay in mental health care." *Id.* at 1082. We do not address these conclusions because we hold that the district court lacked jurisdiction.

[16]So, for example, VCS argues that the VA should be compelled to implement remedial measures recommended in the VA's Mental Health Strategic Plan and the Feeley Memorandum. VCS claims that these measures would improve the circumstances of veterans experiencing delays in the provision of mental health care, and the failure to adopt them violates the Due Process Clause of the Fifth Amendment.

**[5]** Section 511 undoubtedly would deprive us of jurisdiction to consider an individual veteran's claim that the VA unreasonably delayed his mental health care. VCS attempts to circumvent this jurisdictional limitation by disavowing relief on behalf of any individual veteran, and instead proffering evidence of *average* delays to demonstrate statutory and constitutional violations.[17] VCS emphasized in its complaint that the "constitutional defects with the VA's systems, as set forth herein, are . . . divorced from the facts of any individual claim." Compl. ¶ 12. On appeal, VCS repeats that its claims regarding average delays do not involve questions of law or fact necessary to a decision about providing benefits to an individual veteran.

VCS's allegations bear a close resemblance to those made by veterans' organizations who "went out of their way to forswear any individual relief for" veterans in a challenge to the VA's adjudication of benefits appeals recently considered by the D.C. Circuit. *See Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 662 (D.C. Cir.), *cert. denied*, 131 S. Ct. 195 (2010). There, much like here, the veterans' organizations alleged that "[n]othing in this complaint is intended as . . . an attempt to obtain review of an individual determination by the VA or its appellate system," *id.* at 658 (internal quotation marks omitted), and they submitted evidence of average delays in the VA's appellate process, *id.* at 657, 662. But, noting the plaintiffs' "rather apparent effort to avoid the preclusive bite" of

---

[17]For example, VCS alleges:

> The facts herein pertaining to the [veterans and organizational plaintiffs] are included for the specific purpose[ ] of . . . illustrating the Challenged VA Practices, and not for the purpose of obtaining review of decisions by the VA or [the Veterans Court]. Nothing herein is intended or should be construed as an attempt to obtain review of any decision relating to benefits sought by any veteran . . . or to question the validity of any benefits decisions made by the Secretary of the VA.

Compl. ¶ 39.

§ 511(a), the D.C. Circuit concluded that, by disavowing relief based on any individual veteran, the plaintiffs overlooked the fact that "the average processing time does not cause [veterans] injury; it is only *their* processing time that is relevant." *Id.* at 661-62. The court reasoned that even "assuming the alleged 'illegality'—that the average processing time at each stage is too long—that illegality does not cause the [plaintiffs] injury." *Id.* at 662. This analysis led the D.C. Circuit to conclude that the plaintiffs lacked standing to pursue their claims. *Id.* ("If the affiants were suing by themselves—which is how we must analyze the claim—asserting that the average time of processing was too long, it would be apparent that they were presenting a claim not for themselves but for others, indeed, an unidentified group of others. But one can not have standing in federal court by asserting an injury to someone else.").

Here, it may be that VCS similarly does not have standing for its claims, because a claim based on average harm seems contrary to the Supreme Court's requirement of a "particularized" harm that "affect[s] the plaintiff in a personal and individual way." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 561 n.1 (1992). Nevertheless, because it is clear that there is an independent statutory bar to our jurisdiction, we need not reach the standing issue.

**[6]** The fact that VCS couches its complaint in terms of *average* delays cannot disguise the fact that it is, fundamentally, a challenge to thousands of individual mental health benefits decisions made by the VA. In order to determine whether the average delays alleged by VCS are unreasonable, the district court would have to review the circumstances surrounding the VA's provision of benefits to individual veterans. The district court does not acquire jurisdiction over VCS's complaint just because VCS challenges many benefits decisions rather than a single decision. Indeed, an *average* processing time tells us nothing about the causes for such processing time. VCS alleges that the average processing time for

mental health claims is too long, but the district court would have no basis for evaluating that claim without inquiring into the circumstances of at least a representative sample of the veterans whom VCS represents; then the district court would have to decide whether the processing time was reasonable or not as to each individual case. *Cf. Viet. Veterans of Am.*, 599 F.3d at 662; *Price*, 228 F.3d at 422.

Moreover, in order to provide the relief that VCS seeks, the district court would have to prescribe the procedures for processing mental health claims and supervise the enforcement of its order. To determine whether its order has been followed, the district court would have to look at individual processing times. In addition to our general concern that "this approach would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action," *Laird v. Tatum*, 408 U.S. 1, 15 (1972), it would embroil the district court in the day-to-day operation of the VA and, of necessity, require the district court to monitor individual benefits determinations.

**[7]** In sum, there is no way for the district court to resolve whether the VA acted in a timely and effective manner in regard to the provision of mental health care without evaluating the circumstances of individual veterans and their requests for treatment, and determining whether the VA handled those requests properly. We therefore lack jurisdiction to consider VCS's various claims for relief related to the VA's provision of mental health care, including its challenge to the lack of procedures by which veterans may appeal the VA's administrative scheduling decisions. *See* 38 U.S.C. § 511(a).[18]

---

[18]Of course, to the extent that any individual veteran claims unreasonable delay in the provision of his benefits, he may file a claim in the Veterans Court, which has the power to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2); *see also Stegall v. West*, 11 Vet. App. 268, 271 (1998) (concluding that its authority to " 'compel action of the Secretary unlawfully withheld or

B. *Disability Benefits Claims*

VCS next claims that the VA's system for adjudicating veterans' eligibility for disability benefits suffers from unconscionable delays and therefore violates the statutory and constitutional rights of veterans. The district court concluded that, because "determination of whether the delay [in benefits adjudication] is unreasonable may depend on the facts of each particular claim, § 511 prevents this Court from undertaking such a review." *Veterans*, 563 F. Supp. 2d at 1083-84 (citation omitted).[19] We agree with the district court for the same rea-

---

unreasonably delayed' " gave the Veterans Court authority to "remand the claim with directions that the Secretary order an additional medical examination that complies with all pertinent statutory and regulatory requirements" (quoting 38 U.S.C. § 7261(a)(2))); *cf. Ebert v. Brown*, 4 Vet. App. 434, 436-37 (1993) (considering but denying as moot the claimant's challenge to the VA's two-year delay in the scheduling of medical appointments). Likewise, both the Veterans Court and the Federal Circuit have confirmed their jurisdiction to hear challenges to administrative decisions by the VHA that affect the provision of benefits to veterans, such as the VHA "scheduling decisions" challenged by VCS. *See E. Paralyzed Veterans Ass'n v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1358 (Fed. Cir. 2001) (holding that a veteran's "right of appeal covers a challenge to the priority [treatment] category to which the veteran has been assigned," as well as " 'decisions regarding enrollment and disenrollment' " in systems providing for hospital and medical care (quoting Enrollment—Provision of Hospital and Outpatient Care to Veterans, 64 Fed. Reg. 54,207, 54,211 (Oct. 6, 1999))); *Meakin v. West*, 11 Vet. App. 183, 187 (1998) (reversing the Board's conclusion that it lacked jurisdiction to resolve a veteran's eligibility for fee-basis medical care because, inter alia, such review would require only "an administrative decision as to whether the VA facility is capable of furnishing a previously determined course of care, services, or treatment"); *accord* 38 C.F.R. § 20.101(b) (permitting Board review of "questions of eligibility for hospitalization, outpatient treatment, . . . and for other benefits administered by the [VHA]" that do not involve "[m]edical determinations").

[19]The district court also concluded that resolving VCS's claims would "invariably implicate VA regulations," *Veterans*, 563 F. Supp. 2d at 1084, such as regulations requiring the VA to assist the veteran in collecting evi-

son that we explained earlier with respect to delays in mental health care—we simply lack jurisdiction.

**[8]** Like VCS's challenge to delays in the VA's provision of mental health care, VCS's challenge to delays in the VA's adjudication of veterans' disability benefits plainly implicates questions of law and fact regarding the appropriate method of providing benefits to individual veterans. The district court cannot decide such claims without determining whether the VA acted properly in handling individual veterans' benefits requests at each point in the process. Section 511 deprives the district court of jurisdiction over such questions.

In reaching this conclusion, we find ourselves in accord with the Sixth Circuit, which resolved a similar question in *Beamon v. Brown*. There, a group of veterans "asked the district court to review the legality and constitutionality of the procedures that the VA uses to decide benefits claims." *Beamon*, 125 F.3d at 970. The Sixth Circuit concluded that the plaintiffs' claims raised questions of law and fact regarding the provision of benefits by the VA and that "[d]etermining the proper procedures for claim adjudication is a necessary precursor to deciding veterans benefits claims. Under § 511(a), the VA Secretary shall decide this type of question." *Id.* Because the plaintiffs alleged that "VA procedures cause unreasonable delays" in the resolution of benefits claims, "[t]o adjudicate this claim, the District Court would need to review individual claims for veterans' benefits, the manner in

---

dence, 38 C.F.R. § 3.159(c), and regulations establishing the procedural requirements for an appeal, *id.* §§ 20.200-.202. Because "38 U.S.C. § 502 permits litigation of challenges to VA regulations only in the Federal Circuit," the district court viewed § 502 as an independent bar to its jurisdiction. *Veterans*, 563 F. Supp. 2d at 1084. Because we find § 511 controlling and dispositive of VCS's disability benefits claims, we express no view on the impact of § 502.

which they were processed, and the decisions rendered by the regional office of the VA and the BVA." *Id.* at 970-71.[20]

VCS claims that no such review is required here because it challenges *average* delays in the adjudication of service-related disability benefits (as opposed to delay in the processing of any one individual claim). For reasons we previously discussed, that is a distinction without difference. Whether the average delays of which VCS complains are reasonable depends on the facts of individual veterans' claims, such as the complexity of the claim (PTSD claims being some of the most difficult to resolve), the severity of the disability, and the

[20]The dissent's answer to the jurisdictional question is to distinguish between "direct or indirect challenges to actual benefit decisions," which the dissent agrees are beyond the district court's jurisdiction, and "claims that would have no effect on the substance of any actual benefit award," which the dissent argues are not precluded by § 511 and are the type of claims raised by VCS here. Dissenting Op. at 4869-70; *see also id.* at 4869 ("Plaintiffs' concern is not with the substance of any benefits decision. Their concern is with process."). VCS, even if it could, is not asking for process for its own sake but rather process to ensure timely and accurate benefits decisions. *Cf. Gometz v. Henman*, 807 F.3d 113, 116 (7th Cir. 1986) ("The right of access to the courts, like all procedural rights under the due process clause of the fifth amendment, is an entitlement to enough process to ensure a reasonable likelihood of an accurate result, not to process for its own sake.").

In this respect, VCS is much like the three veterans in *Beamon* who sought to represent a "class of similarly-situated veterans, to challenge the manner in which the [VA] processes claims for veterans' benefits," 125 F.3d at 966, which makes the dissent's reliance on that case all the more perplexing, Dissenting Op. at 4870-71. There, by the time the veterans' appeal reached the Sixth Circuit, two of the representative plaintiffs had received final decisions on the merits of their claims and the third was still waiting for a final decision. *Beamon*, 125 F.3d at 966. Those plaintiffs sought, like VCS here, to do more than merely litigate their individual claims to conclusion; rather, they challenged the "legality and constitutionality of the procedures that the VA uses to decide benefits claims." *Id.* at 970. The Sixth Circuit held exactly as we do here: "Determining the proper procedures for claim adjudication is a necessary precursor to deciding veterans benefits claims," and "[u]nder § 511(a), the VA Secretary shall decide this type of question." *Id.*

availability and quality of the evidence. As the district court noted, "a veteran who raises seven or eight issues in his or her claim will likely face a more protracted delay than a veteran who raises only one or two issues." *Veterans*, 563 F. Supp. 2d at 1083. Because the district court lacks jurisdiction to review the circumstances or decisions that created the delay in any one veteran's case, it cannot determine whether there has been a systemic denial of due process due to unreasonable delay.[21]

VCS asserts that if the district court lacks jurisdiction to hear its claims, then it will be unable to secure adequate relief because compelling the VA to issue a decision on individual benefits is not the same as curing the deficiencies that cause widespread delay. To that end, VCS contends that the district court must retain jurisdiction over its "challenge to the administrative gridlock plaguing the adjudication" of benefits claims under the Supreme Court's decision in *Johnson v. Robison*, 415 U.S. 361. VCS notes that the drafters of § 511 recognized that *Robison* "was correct in asserting judicial authority to decide whether statutes meet constitutional muster." H.R. Rep. No. 100-963, at 22, 1988 U.S.C.C.A.N. at 5803.

---

[21]VCS relies on the D.C. Circuit's decision in *Broudy*, 460 F.3d at 115, for the proposition that its challenge to the VA's delays avoids the preclusive effect of § 511. But *Broudy* does not support VCS's position. *Broudy* involved a challenge to the VA's withholding of radiation test results and the plaintiffs' request for a release of those records and an injunction against future misconduct. *Id.* at 109-10. The D.C. Circuit held that it had jurisdiction over these claims only after finding that resolving them did not require the district court "to decide whether any of the veterans whose claims the Secretary rejected [we]re entitled to benefits" or to "revisit any decision made by the Secretary *in the course of making* benefits determinations." *Id.* at 115 (emphasis added). Conversely, adjudicating VCS's claims here would require us to revisit the decisions the VA made in handling a veteran's request "in the course of making benefits determinations." *Id.* According to *Broudy*, such claims are beyond the district court's jurisdiction, and on this we agree.

Although we discussed *Robison* in the context of § 511's history, it requires further discussion here. In *Robison*, a conscientious objector who completed alternative service was denied veterans' educational benefits under a program granting such benefits to persons who served full-time duty in the Armed Forces. 415 U.S. at 362-64. He claimed that this violated the equal protection component of the Due Process Clause. *Id.* at 364-65. The government argued that § 211, the predecessor to § 511, deprived the district court of jurisdiction. *Id.* Indeed, under the government's view of § 211, no court had jurisdiction to review the plaintiff's equal protection claims.[22] *Id.* at 366.

The Supreme Court held that the district court had jurisdiction. Although § 211 provided that "no court of the United States shall have power or jurisdiction to review" the VA's decisions concerning veterans' benefits, *id.* at 367 (internal quotation marks omitted), the Court held that precluding federal court review of constitutional questions would "raise serious questions concerning the constitutionality of § 211(a)," *id.* at 366 & n.8. The Court construed § 211 to bar only federal review of challenges to "the *administration*" of the benefits program. *Id.* at 367. Because the conscientious objector had challenged *Congress's* design on constitutional grounds, § 211's preclusion of review of the *Secretary's* actions did not bar the exercise of jurisdiction.[23] *Id.* Following *Robison*, the

---

[22]Significantly, the Board of Veterans' Appeals had "expressly disclaimed authority to decide constitutional questions." *Robison*, 415 U.S. at 368. Construing § 211 to preclude judicial review would have meant that neither the VA nor any court would have been able to consider the constitutional challenges.

[23]In *Moore v. Johnson*, we concluded that *Robison* "established the principle that 38 U.S.C. § 211(a) does not bar the determination by a federal court of the constitutionality of veterans' benefits legislation." 582 F.2d 1228, 1232 (9th Cir. 1978). We interpreted *Robison* to require an examination of the "substance" of an action to determine whether it challenges a "decision of the Administrator on a 'question of law or fact concerning a benefit" provided by the VA, or instead challenges the constitutionality of an act of Congress. *Id.* Under our precedent, "[o]nly actions within the latter category are reviewable" under § 211. *Devine v. Cleland*, 616 F.2d 1080, 1084 (9th Cir. 1980).

Supreme Court confirmed that "district courts have jurisdiction to entertain constitutional attacks on the operation of the claims systems" under the precursor to § 511. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311 n.3 (1985).

*Robison*'s warning of "serious questions" concerning statutes that preclude all judicial review is of limited application here. First, the fact that VCS drapes its claims in constitutional terms is not itself sufficient to confer jurisdiction on us. Numerous courts have recognized that § 511 broadly divests district courts of jurisdiction over constitutional claims related to benefits even where those claims concern agency procedures and do not challenge specific VA benefits determinations. *See, e.g.*, *Beamon*, 125 F.3d at 971 ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to the CVA and the Federal Circuit over claims seeking review of VA decisions that relate to benefits decisions under § 511(a). This jurisdiction includes constitutional issues . . . ."); *Hall v. U.S. Dep't Veterans' Affairs*, 85 F.3d 532, 535 (11th Cir. 1996) (per curiam) (holding that a direct constitutional challenge to a VA regulation must be brought in the Federal Circuit); *Hicks*, 961 F.2d at 1370 ("These provisions amply evince Congress's intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in this exclusive appellate review scheme."); *Addington v. United States*, 94 Fed. Cl. 779, 783 (2010) ("The exclusive remedy for claims of due process violations lies in the [Veterans Court].").

More importantly, nothing in the VJRA forecloses judicial review of constitutional questions as VCS suggests. After *Robison* read § 211 broadly, Congress "subsequently established the [Veterans Court], effectively stripping district courts of any such jurisdiction," *Beamon*, 125 F.3d at 973 n.4; *cf. Bates*, 398 F.3d at 1364 (explaining that the VJRA's "specialized review process" exchanged court review for "independent judicial review of the [VA]'s final decisions by a new Article I Court"). But Congress did not leave veterans without

a forum for their constitutional claims. When Congress created the Veterans Court, it expressly empowered that court to "decide all relevant questions of law, interpret *constitutional*, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." 38 U.S.C. § 7261(a)(1) (emphasis added). That same statute leaves no doubt that the Veterans Court has the authority to adjudicate veterans' constitutional claims that benefits have been "unlawfully withheld or unreasonably delayed." *Id.* § 7261(a)(2); *Vietnam Veterans of Am.*, 599 F.3d at 659-60 & n.6; *see also Beamon*, 125 F.3d at 968 (finding that the Veterans Court "has the power to provide adequate relief for the plaintiffs" seeking to challenge the VA's "unreasonably delayed benefits decisions"). The Veterans Court's power is such that its orders not only affect how a single veteran's claim is handled, but will dictate how similar claims are handled by the VA in the future. *See Beamon*, 125 F.3d at 970 ("Plaintiffs may bring their claims individually, and the [Veterans Court]'s decisions of individual claims will have a binding effect on the manner in which the VA processes subsequent veterans' claims."). That power, together with the authority to issue extraordinary writs pursuant to the All Writs Act, 28 U.S.C. § 1651(a); *see Vietnam Veterans of Am.*, 599 F.3d at 659-60 & n.6; *see also Erspamer*, 1 Vet. App. at 7, makes the Veterans Court an adequate forum for this type of claim.

Beyond the Veterans Court, Congress also ensured that an Article III court can review such claims. Congress granted the Court of Appeals for the Federal Circuit the "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). To drive the point home, Congress affirmed that the Federal Circuit "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7292(d)(1). In tandem, the

availability of review by both the Veterans Court and the Federal Circuit evinces Congress's intent to protect the federal courts and the VA from time-consuming veterans' benefits litigation, while providing a specialized forum wherein complex decisions about such benefits can be made. Congress has fully answered the Supreme Court's "serious question" concerning the constitutionality of § 511's limitation on our jurisdiction.

**[9]** In sum, Congress may have foreclosed *our* review of the VA's decisions related to claims adjudication, but it has not foreclosed federal judicial review *in toto*.[24] Whatever "serious questions," *Robison*, 415 U.S. at 366, might arise if Congress were to preclude all review of constitutional challenges, there can be no question that Congress may eliminate our jurisdiction to review the VA's decisions, while preserving such review elsewhere. U.S. Const. art. III, § 2, cl. 2. As the Supreme Court stated in *Lockerty v. Phillips*, "[t]he Congressional power to ordain and establish inferior courts includes the power 'of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.' " 319 U.S. 182, 187 (1943) (quoting *Cary v. Curtis*, 44 U.S. (3 Howe) 236, 245 (1845)). We lack jurisdiction over VCS's claims challenging delays in the VA's adjudication of service-related disability benefits.

## C.  *Regional Office Procedures*

**[10]** VCS argues that there is a lack of adequate procedures when veterans file their claims for service-related dis-

---

[24]Although the dissent accuses us of "leav[ing] millions of veterans" without an available remedy to address delays affecting benefits determinations, it has failed to acknowledge (let alone analyze) the versatility of the VA system. Dissenting Op. at 4868. The dissent is correct that there is a "forum" available for veterans to challenge the operation of the VA system, *id.*, but that forum does not involve the district court.

ability benefits at VA Regional Offices. In its complaint, VCS framed this claim as a challenge to the constitutionality of the VJRA, claiming that the statutes codified by the act deny veterans adequate procedural safeguards. *See* Compl. ¶ 202 ("The VJRA violates Plaintiffs' due process rights in a multitude of respects . . . ."). On appeal, VCS argues that its members are denied due process because existing procedures do not provide necessary protections to veterans during the initial claims process. Procedures that VCS wishes to see implemented include a pre-decision hearing, discovery and subpoena power, and the retention of paid counsel to assist in the submission of an initial claim. The district court denied this claim on the merits, holding that the VA's procedures did not violate the Due Process Clause of the Fifth Amendment. *Veterans*, 563 F. Supp. 2d at 1088-89. We agree with the district court.

### 1.  Jurisdiction

The jurisdictional question is a complex and close one, but we conclude that we have jurisdiction over these claims. As we have discussed, we lack jurisdiction either if § 511 prohibits our jurisdiction, or if review of VCS's claim is entrusted to the exclusive review mechanism established by the VJRA. We first hold that § 511 does not bar our jurisdiction to consider this claim. We then conclude that VCS's claim does not fall within the exclusive jurisdiction of the Veterans Court or the Federal Circuit.

First, VCS has carefully structured its complaint to avoid § 511's preclusive effect. As pled, VCS asserts a facial challenge to the constitutionality of the VJRA based not on any average delays experienced by veterans, but on the absence in the statute of certain procedures VCS claims are necessary to safeguard veterans' rights. Were the former 38 U.S.C. § 211 applicable here, there is little doubt that we would have jurisdiction to hear this claim because the Supreme Court held that facial constitutional challenges were exempted from § 211's

jurisdictional preclusion. *See Robison*, 415 U.S. at 366-74. But since the enactment of the VJRA, the courts of appeals appear split on the issue of whether that portion of *Robison*'s analysis survives the VJRA. We question, however, whether these courts have thoroughly analyzed the efforts Congress undertook to broaden § 511 and the concurrent effort it took to establish an exclusive review scheme for claims related to veterans' benefits. The Second and Fifth Circuits, as well as the Veterans Court, have affirmed that facial constitutional challenges to acts of Congress—including challenges brought by individual claimants—may be brought in federal district court despite § 511's broad preclusive mandate. *See, e.g.*, *Zuspann*, 60 F.3d at 1159 (addressing whether the claimant's "complaint challenges the VA's decision to deny him benefits, or whether it makes a facial challenge to an act of Congress"); *Larrabee ex rel. Jones*, 968 F.2d at 1500 (the VJRA "precludes judicial review of non-facial constitutional claims"); *Disabled Am. Veterans*, 962 F.2d at 141 (same); *Dacoron v. Brown*, 4 Vet. App. 115, 119 (1993). The Eighth Circuit appears to have taken a different view. *See Hicks*, 961 F.2d at 1369-70 (concluding that provisions of the VJRA "amply evince Congress's intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in [an] exclusive appellate review scheme"); *see also Hall*, 85 F.3d at 534-35 (recognizing that "[t]he Eighth Circuit Court of Appeals appears to have taken a different view" as to whether *Robison*'s preservation of facial constitutional challenges survives the VJRA). And in the case most analogous to the claims presented here, *Beamon v. Brown*, the Sixth Circuit appears to have equivocated on the matter, holding that "district court jurisdiction over facial challenges to acts of Congress survived [§ 511]," 125 F.3d at 972, yet concluding that "Congress . . . effectively stripp[ed] district courts of any such jurisdiction" over "constitutional attacks on the operation of the claims system," *id.* at 973 n.4 (internal quotation marks omitted). *Beamon*, however, involved a putative class action brought by three veterans challenging delays

in the processing of veterans' benefits, *id.* at 966, and the Sixth Circuit concluded that the plaintiffs' own claims could be brought in the Veterans Court, *id.* at 972-74.

**[11]** Ultimately, we need not decide whether an individual seeking benefits would be barred by § 511 from bringing a facial constitutional challenge in the district court. The immediate question before us is whether VCS's challenge to the VJRA is similar to its claims challenging the conduct of the VHA and the delays in adjudication of service-related disability claims, which we have already concluded would require review of the circumstances of individual requests for benefits by veterans. Unlike those previous claims, reviewing the VA's procedures for filing and handling benefits claims at the Regional Offices does not require us to review "decisions" affecting the provision of benefits to any individual claimants. 38 U.S.C. § 511; *see also id.* § 5104 (requiring notice to a veteran of a "decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant"). Indeed, VCS does not challenge decisions at all. A consideration of the constitutionality of the procedures in place, which frame the system by which a veteran presents his claims to the VA, is different than a consideration of the decisions that emanate through the course of the presentation of those claims. In this respect, VCS does not ask us to review the decisions of the VA in the cases of individual veterans, but to consider, in the "generality of cases," the risk of erroneous deprivation inherent in the existing procedures compared to the probable value of the additional procedures requested by VCS. *See Mathews v. Eldridge*, 424 U.S. 319, 344 (1976). Evaluating under the Due Process Clause the need for subpoena power, the ability to obtain discovery, or any of the other procedures VCS requests is sufficiently independent of any VA decision as to an individual veteran's claim for benefits that § 511 does not bar our jurisdiction.[25]

---

[25]To that extent, VCS's claim bears a close resemblance to other due process challenges we are institutionally competent to evaluate, for exam-

Second, unlike VCS's challenge to delays in the administration of the benefits program, the exclusive review scheme established by the VJRA in 38 U.S.C. §§ 7252, 7261, and 7292 does not deprive us of jurisdiction over this claim. Although an individual veteran may challenge "VA procedures during the adjudication of individual claims contesting delayed benefits decisions," *Beamon*, 125 F.3d at 969, in the Veterans Court or the Federal Circuit, the VJRA does not provide a mechanism by which the organizational plaintiffs here might challenge the absence of system-wide procedures, which they contend are necessary to afford due process. This case does not involve individual veterans seeking to challenge the lack of procedures in place at VA Regional Offices, but rather organizations representing their members claiming a system-wide risk of erroneous deprivation. *See Dacoron*, 4 Vet. App. at 119 (noting that constitutional challenges could be "presented to this Court only in the context of a proper and timely appeal taken from such decision made by the VA Secretary through the [Board]"). In other words, because VCS cannot bring its suit in the Veterans Court, that court cannot claim exclusive jurisdiction over the suit. Because VCS would be unable to assert its claim in the review scheme established by the VJRA, *see* 38 U.S.C. §§ 7252, 7261, 7292, that scheme does not operate to divest us of jurisdiction.[26]

---

ple, whether the lack of notice or a hearing requires us to order specific procedures capable of implementation, *see Goldberg v. Kelly*, 397 U.S. 254, 285 (1970); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 18-19 (1978) (hearing required before terminating utilities for non-payment); *Gagnon v. Scarpelli*, 411 U.S. 778, 789-91 (1973) (there is no automatic right to an attorney at probation revocation hearings), or whether *any* process is due in the first place, *e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 680-82 (1977) (due process does not require a hearing before corporal punishment is inflicted); *Goss v. Lopez*, 419 U.S. 565, 581-83 (1975) (requiring a hearing before a student is suspended or as soon thereafter as practicable).

[26]Even if an individual veteran could raise these claims in an appeal in the Veterans Court or the Federal Circuit, that fact alone does not deprive us of jurisdiction here. The Veterans Court has exclusive jurisdiction over decisions of the Board of Veterans' Appeals, not over every issue capable of being raised in an appeal from the Board. *See* 38 U.S.C. § 7252(a).

**[12]** We conclude that we have jurisdiction over VCS's claim related to procedures affecting adjudication of claims at the Regional Office level. We are not precluded from exercising jurisdiction by either § 511 or the provisions conferring exclusive jurisdiction on the Veterans Court and the Federal Circuit.

### 2.   Merits

**[13]** Satisfied of our jurisdiction, we turn to the merits of this claim. We affirm the district court because the non-adversarial procedures at the Regional Office level are sufficient to satisfy due process. The district court conducted an analysis of the *Mathews v. Eldridge* factors and ruled that although "veterans and their families have a compelling interest in" their benefits, and "the consequences of erroneous deprivation can be devastating," the risk of error was low and the government's interest weighed strongly in favor of denying VCS the additional procedures requested.[27] *Veterans*, 563 F. Supp. 2d at 1087-88.

We agree with the district court's analysis on this point and reproduce it here:

> Under the *Mathews* factors, the current system for adjudicating veterans' [disability] claims satisfies due process. It is without doubt that veterans and their families have a compelling interest in receiving disability benefits and that the consequences of erroneous deprivation can be devastating. In looking at the totality of [disability] claims, however, the risk of erroneous deprivation is relatively small. 11% of

---

[27]In evaluating whether a procedure satisfies due process, courts balance (1) the private interest; (2) the risk of erroneous deprivation and the likely value, if any, of extra safeguards; and (3) the government's interest, especially in avoiding the burden any additional safeguards would impose. *Mathews*, 424 U.S. at 335.

veterans file Notices of Disagreement upon adjudication of their claims by [Regional Offices]. Only 4% proceed past the NOD to a decision by the [Board]. Thus, while the avoidable remand rates at the VA are extraordinarily high, only 4% of veterans who file benefits claims are affected. Plaintiffs here "confront the constitutional hurdle posed by the principle enunciated in cases such as *Mathews* to the effect that a process must be judged by the generality of cases to which it applies, and therefore, process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for all of them." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 330 (1985).

Moreover, although the additional safeguards Plaintiffs seek would likely reduce the number of avoidable remands and erroneous deprivations, the fiscal and administrative burdens of these additional procedural requirements are significant. Plaintiffs seek, in essence, to transform the claims adjudication process at the [Regional Office] level from an ostensibly non-adversarial proceeding into one in which the full panoply of trial procedures that protects civil litigants is available to veterans. For example, Plaintiffs seek the general right of discovery, including the power to subpoena witnesses and documents, the ability to examine and cross-examine witnesses, the ability to pay an attorney, and the right to a hearing. Implementation and maintenance of such a system would be costly in terms of the resources and manpower that the VA would need to commit to the [Regional Office] proceedings.

*Id.* (footnotes omitted).

**[14]** We emphasize, as the district court did, that Congress purposefully designed a non-adversarial system of benefits

administration. *See Walters*, 473 U.S. at 323-24 (VA matters should be kept "as informal and nonadversarial as possible"); *see also Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 588-89 (9th Cir. 1992) ("[I]n passing the [V]JRA Congress reaffirmed the government's interest [in an informal benefits administration system] . . . ."). This is particularly true as it pertains to the retention of counsel during the initial claim phase, which the Supreme Court found "would seriously frustrate the oft-repeated congressional purpose" to maintain the non-adversarial bent of benefits administration. *Walters*, 473 U.S. at 323. Although VCS challenges more procedural restrictions than just the lack of an attorney at the Regional Office stage, the Supreme Court's analysis in *Walters* compels a similar outcome. Subpoena power, discovery, pre-decision hearings, and the presence of paid attorneys would transform the VA's system of benefits administration into an adversarial system that would tend to reflect the rigorous system of civil litigation that Congress quite plainly intended to preclude. The choice between a vigorously adversarial system and a less adversarial one reflects serious policy considerations and is a permissible one. Congress must be afforded "considerable leeway to formulate" additional processes and procedures to cure deficiencies in the VA's administration of benefits "without being forced to conform to a rigid constitutional code of procedural necessities." *Walters*, 473 U.S. at 326. Because VCS cannot overcome the paramount interest Congress has in preserving a non-adversarial system of veterans' benefits administration, we affirm the district court's ruling.

## IV.   CONCLUSION

VCS's complaint sounds a plaintive cry for help, but it has been misdirected to us. As much as we may wish for expeditious improvement in the way the VA handles mental health care and service-related disability compensation, we cannot exceed our jurisdiction to accomplish it. The Constitution "protects us from our own best intentions" by "divid[ing]

power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *New York v. United States*, 505 U.S. 144, 187 (1992). There can be no doubt that securing exemplary care for our nation's veterans is a moral imperative. But Congress and the President are in far better position "to care for him who shall have borne the battle, and for his widow and his orphan." Abraham Lincoln, President of the United States of America, Second Inaugural Address (Mar. 4, 1865), *available at* http://www.loc.gov/rr/program/bib/ourdocs/Lincoln2nd.html. We would work counter to the political branches' own efforts by undertaking the type of institutional reform that VCS requests. Such responsibilities are left to Congress and the Executive, and to those specific federal courts charged with reviewing their actions; that is the overriding message of the VJRA, and it is one that we must respect here.

We conclude that the district court lacks jurisdiction to reach VCS's statutory and due process challenges to the alleged delays in the provision of mental health care and to the absence of procedures to challenge such delays. We likewise conclude that the district court lacks jurisdiction to reach VCS's claims related to delays in the adjudication of service-related disability benefits. We conclude that the district court has jurisdiction to consider VCS's challenges to the alleged inadequacy of the procedures at the Regional Office level, and properly exercised that jurisdiction to deny VCS's claim on the merits.[28]

AFFIRMED    in    part,    REVERSED    in    part,    and

---

[28]VCS contends that the district court erred in refusing to compel discovery of additional instances of suicide incident briefs (some of which had already been produced) and refusing to compel a response to an interrogatory seeking the average number of days PTSD claims take at the Regional Office level. But because we have disposed of VCS's claims, we do not reach VCS's challenge to the district court's discovery rulings.

REMANDED with instructions to DISMISS. The panel opinion, *Veterans for Common Sense v. Shinseki*, 644 F.3d 845 (9th Cir. 2011), is hereby VACATED and shall not be cited as precedent by or to any court of the Ninth Circuit. Costs on appeal awarded to Defendants-Appellees.

---

SCHROEDER, Senior Circuit Judge, dissenting:

> "Let me see if I've got this straight: in order to be grounded, I've got to be crazy and I must be crazy to keep flying. But if I ask to be grounded, that means I'm not crazy any more and I have to keep flying." *Catch-22* (Paramount Pictures 1970), *adaptation of the novel by* Joseph Heller (1961).

I agree with the majority's holding that the district court had jurisdiction to consider the claim brought by the plaintiff-veterans organizations that the procedures used in the handling of the initial filing of benefits claims are inadequate. I further agree with affirming the denial of that claim on the merits, because what Plaintiffs seek is inconsistent with the congressional purpose of simplified, nonadversarial proceedings. *See Walters v. Nat'l Assoc. of Radiation Survivors*, 473 U.S. 305 (1985).

Because I agree with the majority's holding that there is jurisdiction to consider that claim of inadequate procedures, however, I am confounded by the majority's holding that the district court lacked jurisdiction to consider claims that other procedural inadequacies are causing intolerable systemic delays in the VA's processing of benefits claims and in providing mental health services. While review of substantive benefits decisions is, of course, limited to the Court of Appeals for Veterans Claims (the "Court of Veterans Appeals") and the Federal Circuit under 38 U.S.C. § 511, the

claims of systemic delay do not, in my view, require any review of the VA's actual benefits decisions.

The majority thus leaves millions of veterans—present, past, and future—without any available redress for claims that they face years of delay in having their rights to hard-earned benefits determined. No one could think this is just or what Congress intended.

The language and history of § 511 demonstrate instead to me that Congress did not leave veterans without any forum to challenge the way the system is operating. The district court should be able to hear a systemic challenge, because § 511 does not pertain to such a challenge. Section 511 is about actual benefits decisions. It refers to "questions of law and fact necessary to a decision by the Secretary." It then provides that the "decision of the Secretary as to any such question" shall be subject only to review by the veterans courts and Federal Circuit. *See* 38 U.S.C. §§ 7104(a), 7252(a), 7266(a), 7292(a). The purpose of the administrative veterans courts is to decide whether individual veterans are entitled to benefits. The statute therefore must be referring to an actual decision by the Secretary granting or denying benefits.

This is apparent from Congress' use of the term "decision" in the provision that requires the Secretary to give a claimant notice "of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant." 38 U.S.C. § 5104(a). This must mean a decision granting or denying benefits. It cannot include a decision to delay making a decision. Yet that is the senseless majority conclusion. *See* slip op. at 4846, 4853 n. 20.

Plaintiffs do not challenge any "decision of the Secretary." Plaintiffs seek injunctive relief affecting the procedures that the Regional Offices, the Board of Veterans Appeals, and the Court of Veterans Appeals utilize to process and decide claims. The complaint alleges a denial of due process because

allegedly unreasonable delays deprive Plaintiffs' members of property, i.e. benefits, without due process of law. Such a claim can be established by showing that there is a risk of wrongful deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Accordingly, I conclude the district court had jurisdiction to consider all of the claims alleged in Plaintiffs' complaint.

The fundamental flaw in the majority's reasoning is its mistaken assumption that adjudication of Plaintiffs' systemic delay claims requires individualized examination of actual benefits determinations. Plaintiffs' concern is not with the substance of any benefits decision. Their concern is with process. Courts have routinely considered claims that excessive delay has resulted in a denial of due process. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) (delay of administrative hearing would at some point become a constitutional violation); *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) (length of delay important factor); *Kraebel v. NYC Dep't of Housing Pres. and Dev.*, 959 F.2d 395, 405 (2d Cir. 1992); *Schroeder v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991) ("Justice delayed is justice denied, the saying goes: and at some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature"); *Coe v. Thurman*, 922 F.2d 528, 530-31 (9th Cir. 1990) (delay in state appeal); *Rodrigues v. Donovan*, 769 F.2d 1344, 1348-49 (9th Cir. 1985); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490-91 (3d Cir. 1980) (four year delay in reviewing disability application). Indeed, the district court did decide the merits of Plaintiffs' claim of unreasonable delay in the VA's provision of mental health services, and a majority of the three-judge panel held it should have fashioned some relief. *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 878 (9th Cir. 2011).

There may be sound reasons for courts to be wary of intruding too much on the day-to-day operation of the executive branch. *See Heckler v. Day*, 467 U.S. 104 (1984). But § 511 should not be an absolute bar to district court jurisdic-

tion for claims of due process denials on account of systemic delay. The principle which the majority announces for its contrary holding is that because of § 511, veterans cannot bring any constitutional challenge in district court that might affect a benefits decision, including the way it is processed. The case law does not support that principle.

The case law, as I understand it, reflects a clear delineation between claims that represent direct or indirect challenges to actual benefits decisions, and for which district court jurisdiction is lacking, and claims that would have no effect on the substance of any actual benefit award, and thus where § 511 is no bar. In the Ninth Circuit, our decisions in *Chinnock v. Turnage*, 995 F.2d 889 (9th Cir. 1993), and *Hicks v. Small*, 69 F.3d 967 (9th Cir. 1995), represent direct and indirect challenges to actual benefits decisions, where we properly found that district court jurisdiction was lacking. In *Chinnock*, the plaintiff-veteran brought a direct challenge in district court to the denial of his benefits by asking that court to review the VA's interpretation of a regulation that resulted in the denial. 995 F.2d at 890. We held the district court lacked jurisdiction. *Id.* In *Hicks*, the plaintiff filed a *Bivens* action in district court against a VA doctor for conduct that allegedly reduced his benefits, and we held this was also a challenge, albeit indirect, to the denial of benefits. 69 F.3d at 968-70. In contrast, we have held that a veteran can sue in district court for tort claims unrelated to his benefits determination. *See Littlejohn v. United States*, 321 F.3d 915 (9th Cir. 2003). In *Littlejohn*, the plaintiff brought a Federal Tort Claims Act ("FTCA") action against VA doctors for negligence. *Id.* at 918. We held there was jurisdiction because adjudication of the tort claim would have no effect on his benefits award. *Id.* at 921.

The decisions of other circuits are in accord. In *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996), the Tenth Circuit held that where the veteran tried to sue the VA for conspiracy and fraud in concealing records that resulted in a denial of benefits, the district court lacked jurisdiction. Like

our decision in *Hicks*, *Weaver* reflected an indirect challenge to the denial of benefits. The Eighth Circuit in *In re Russell*, 155 F.3d 1012 (8th Cir. 1998) (per curiam), refused to issue a writ of mandamus to require the VA courts to act on a request for benefits pending in the Court of Veterans Appeals. Relying on *Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir. 1997), the *Russell* court reasoned that under the Veterans Judicial Review Act and the All Writs Act, only the Court of Veterans Appeals and Federal Circuit had the power to require the VA to act with respect to a particular claim for benefits. 155 F.3d at 1012-13.

*Beamon* is relied upon by the majority to support its holding, but *Beamon* is, in fact, consistent with my understanding of the cases. *Beamon* concerned a claim in the district court for injunctive relief by plaintiffs who were pursuing their individual claims for benefits in the VA administrative courts. 125 F.3d at 966. The Sixth Circuit held that under § 511, the plaintiffs' avenue of relief from the delay in each of their cases was to seek a writ of mandamus from the Court of Veterans Appeals pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Beamon*, 125 F.3d at 968-70. The Sixth Circuit, however, did not view the plaintiffs' allegations to be a systemic due process challenge similar to the one before us. It characterized the plaintiffs' "bare allegations" of procedural delays as being "closer to challenges to individual benefit decisions than a constitutional" attack on VA procedures. *Id.* at 973 n.5. That is why I believe it does not support the majority's conclusion that Plaintiffs here cannot sue for the systemic denial of due process. As the majority does recognize, slip op. at 4862-63, the plaintiffs in *Beamon* were individuals whose interests were primarily personal and not, as here, organizations whose concerns must reflect the operation of the system in all cases. Thus although the majority attempts to draw from the cases a rule that any claim concerning the VA's conduct during benefits proceedings is outside the jurisdiction of the district court, the cases actually establish only that challenges to particular benefits decisions cannot be

brought in district court and must be brought in the VA administrative courts.

The federal courts have, in fact, repeatedly entertained challenges to statutes or procedures affecting the conduct of VA claims adjudication. The Second Circuit in *Disabled American Veterans v. U.S. Department of Veterans Affairs*, 962 F.2d 136, 137-38 (2d Cir. 1992), considered an equal protection challenge to a statute that eliminated the availability of veterans' family benefits in certain circumstances. The Second Circuit held there was jurisdiction to consider the equal protection challenge, because consideration of such a constitutional claim did not involve review of any individual benefits determination. *Id.* at 140-41; *see also Larrabee ex rel. Jones*, 968 F.2d 1497, 1501 (2d Cir. 1992) (rejecting a challenge of inadequate care and noting that "district courts continue to have jurisdiction to hear *facial* challenges of legislation affecting veterans' benefits" (internal quotation marks and citation omitted) (emphasis in original)); *Zuspann v. Brown*, 60 F.3d 1156, 1159 (5th Cir. 1995) (district court would have jurisdiction over a facial challenge to an act of Congress).

Applying a similar principle, the D.C. Circuit in *Broudy v. Mather*, 460 F.3d 106, 108, 115 (D.C. Cir. 2006), held the district court had jurisdiction to consider claims of veterans who contended VA officials denied them their constitutional right of meaningful access to administrative proceedings. The veterans alleged the VA withheld accurate information about their exposure to radiation and thereby rendered access to VA administrative proceedings meaningless. *Id.* at 108-11. Jurisdiction existed because the case was "not about whether they should have received Government compensation for their sickness," but whether they were denied meaningful access to administrative proceedings before the VA. *Id.* at 108.

The D.C. Circuit's decision in *Broudy* is particularly instructive here, because the court there reviewed its prior

decisions in *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000) (per curiam), and *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005). These are decisions on which the majority here relies in concluding that § 511 has nearly universal sweep. Yet, as *Broudy* recognized, those cases actually concern attempts to second guess actual benefits determinations. *See* 460 F.3d at 114-15.

In *Price*, an individual veteran filed a complaint in the district court alleging that the VA wrongfully failed to reimburse him for certain medical expenses. 228 F.3d at 421. The D.C. Circuit held that even construing his complaint as alleging a federal tort claim for intentional or negligent failure to pay medical bills, the district court lacked jurisdiction because the plaintiff was indirectly seeking review of his benefits determination. *Id.* at 422. This was because "a necessary predicate of [the plaintiff's] claim [was] a determination that the [VA] acted in bad faith." *Id.* Since determining whether the VA acted in bad faith, or was negligent, would require the district court to determine first whether the VA acted properly in handling Price's request for reimbursement, i.e. awarded proper benefits, judicial review was foreclosed by § 511(a). *Id.* The court explained that "the district court lacked jurisdiction to consider [the plaintiff's] federal claim because the underlying claim [was] an allegation that the VA unjustifiably denied him a veterans' benefit." *Id.* at 421.

Similarly, in *Thomas*, the VA had denied an individual veteran's claim for benefits, and the plaintiff-veteran filed a federal tort claim in district court. 394 F.3d at 972. He alleged claims that the VA committed medical malpractice by failing to inform him that he had a mental illness and in failing to provide him with medical services appropriate for his condition. *Id.* The court, following *Price*, held that only those allegations that the VA deprived him of medical care were barred by § 511, because review of such claims would require the "district court to determine first whether the VA acted properly in providing Thomas benefits." *Id.* at 974-75 (quoting

*Price*, 228 F.3d at 422). The court held it did have jurisdiction over the claims alleging failure-to-inform, because they did not involve reviewing any issues decided by the VA in the benefits determination. *Id.* The *Price* and *Thomas* cases therefore do not support the majority.

The D.C. Circuit in *Broudy* later summed it up when it said that district courts "have jurisdiction to consider questions arising under laws that affect the provision of benefits so long as the Secretary has not actually decided them in the course of a benefits proceeding." 460 F.3d at 114. *Broudy* expressly rejected the government's argument (that had been premised on a phrase used in *Price* and quoted in *Thomas*) that § 511 barred any district court consideration of procedural matters relating to the conduct of benefits proceedings. *Id.* at 114-15. The relevant phrase in those cases described § 511's preclusive scope as encompassing "whether the VA 'acted properly' in handling" the veterans claims for benefits. *Id.* at 115. The Government had contended that the phrase "acted properly" meant that the district court lacked jurisdiction to consider any suit that challenged any aspect of the handling of claims, including procedures. *Id.* at 114-15.

The D.C. Circuit in *Broudy* went to some pains to make it clear that the district court lacked jurisdiction to review only the "actual decisions" denying benefits. The court said:

> Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits, . . . and, more importantly for the question of our jurisdiction, prevents district courts from reviewing the Secretary's decision once made . . . .

*Broudy*, 460 F.3d at 112 (internal quotation marks and citations omitted) (emphasis in original). The D.C. Circuit has since confirmed this narrow interpretation of § 511's bar. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 (D.C. Cir. 2010) (noting that in *Broudy*, it deemed "that only questions '*explicitly* considered' by the Secretary [in making a benefits determination] would be barred by § 511, not questions he could be 'deemed to have decided' or, presumably, implicitly decided" (emphasis in the original)).

The upshot of the majority's holding with respect to the claims of systemic delay is that veterans have no place to go to adjudicate such claims. The majority may believe that there is an adequate remedy for unreasonable delay by means of individual mandamus proceedings in the Court of Veterans Appeals or the Federal Circuit to require the VA administrative courts to act more promptly. Slip op. at 4850-51 n. 18, 4857-58. Yet such an extraordinary writ is rarely granted. *See Erspamer v. Derwinski*, 1 Vet. App. 3, 9-11 (1990) (declining to issue the writ even after concluding that a delay of ten years for benefits was unreasonable). The writ is not binding in any case other than the case in question, see *Star Editorial, Inc. v. United States Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993) (reasoning that whether to grant the writ is based on the facts of the individual case), and thus would have no affect on the procedures that apply to the millions of potential claims represented by these Plaintiffs.

The majority's position appears to rest principally upon another aspect of the D.C. Circuit's opinion in *Vietnam Veterans of America*. The plaintiffs in that case framed their attack on the appeals process as an attack on "average" delay, rather than on delay in the handling of any particular case. *Vietnam Veterans of Am.*, 599 F.3d at 661-62. The court held that since no plaintiff could show an injury caused by "average" delay, the plaintiffs lacked standing to assert the claim. *Id.* at 662. The court did not discuss whether the plaintiffs might use past evidence of aggregate delay to demonstrate a risk of a wrong-

ful deprivation of property in the future. *See Mathews*, 424 U.S. at 335.

*Vietnam Veterans* focused on the causal relationship of the harm alleged in the complaint, "average delay," to the actual harm suffered by individuals. 599 F.3d at 661-62. The court concluded there was no causal nexus sufficient to confer standing. *Id.* The majority accepts this reasoning and goes much further to conclude that any claim to remedy a systemic delay must be treated as a challenge to individual benefits determinations, hence reviewable only in the Veterans Court of Appeals and Federal Circuit, and thus condemning veterans to suffer intolerable delays inherent in the VA system.

The majority's holding thus reduces itself to a "Catch 22": To challenge delays in the system, you must bring a systemic claim and not just an individual claim. But if you bring a systemic claim, it has to be treated as an individual claim and you must suffer the delays in the system. Get it?